No. 22-1939

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

PROMPTU SYSTEMS CORPORATION,
*Plaintiff-Appellant*,
v.
COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC,
*Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of Pennsylvania, Case No. 2:16-cv-06516-JS
Chief Judge Juan R. Sánchez

# RESPONSE BRIEF FOR APPELLEES

Ian Moore
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue, Suite 3301
New York, New York 10153
(212) 310-8000

Mark A. Perry
*Principal Attorney*
Joshua Halpern
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
(202) 682-7000

*Counsel for Appellees Comcast Corporation and Comcast Cable Communications, LLC*

December 21, 2022

# REPRESENTATIVE CLAIMS

## U.S. Patent No. 7,047,196 (Claim 53)

53. A method of operating at least part of a *speech recognition system coupled to a wireline node* in a network, comprising the steps of:

processing a *multiplicity of received identified speech channels* to create a multiplicity of identified speech content; and

responding to said identified speech content to create an identified speech content response that is unique to each of said multiplicity of identified speech contents;

wherein said speech recognition system is provided said *multiplicity of received identified speech channels* based upon a *received back channel* at said wireline node from a multiplicity of user sites coupled to said network;

wherein said network supports at least one of the collection comprising: cable television delivery to said multiplicity of user sites; and video delivery to said multiplicity of user sites.

## U.S. Patent No. 7,260,538 (Claim 34)

34. A centralized multi-user voice operated television control system, comprising:

television remote controls configured to directly and wirelessly control television sets and additionally to receive user voice input and wirelessly transmit first output representative of the voice input to television set-top boxes;

television set top boxes configured to receive television input signals via cable television link and provide television output signals compatible with television sets, the set top boxes additionally responsive to receiving the first output from the television remote controls to transmit representative second output to a central processing station via the cable television link;

*a centralized processing station* configured to receive and process second output from a multitude of television set top boxes by applying voice recognition to the second output to identify user-intended voice commands, to derive set-top-box-compatible instructions to carry out the identified voice commands, and returning signals representing the instructions to respective top boxes via the cable television link;

where the set top boxes are further responsive to receiving the signals representing the instructions from the central processing station to execute the instructions.

## CERTIFICATE OF INTEREST

Counsel for Appellees Comcast Corporation and Comcast Cable Communications, LLC certifies the following:

1. The full name of every entity represented by me is:

   Comcast Corporation, Comcast Cable Communications, LLC

2. The parties named in the caption are the real parties in interest.

   None/Not Applicable

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of Appellee are as follows:

   None/Not Applicable

4. The names of all law firms and the partners or associates that appeared for Appellee in the trial court or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

   Ajay S. Krishnan
   Maile Yeats-Rowe
   Maya Karwande
   Taylor Reeves
   Brian Ferrall
   Candice Mai Khanh Nguyen
   Christopher S. Sun
   David J. Silbert
   Joseph Taylor Gooch
   Justina K. Sessions
   Leo L. Lam
   **Keker Van Nest & Peters LLP**
   633 Battery Street
   San Francisco, CA 94111

   Matthias A Kamber
   **Paul Hastings, LLP**
   101 California Street, Suite 48th Floor
   San Francisco, CA 94111

Stephen J. Kastenberg
John Wesley Scott
Marc S. Segal
Michael R. McDonald
Wesley Stafford Stevenson
**Ballard Spahr Andrews & Ingersoll**
1735 Market Street
51st Floor
Philadelphia, PA 19103

5. The following pending cases may affect or be affected by this appeal:

*Promptu Systems Corporation v. Comcast Cable Communications, LLC*, Nos. 19-2368, 19-2369 (Fed. Cir.)

*Promptu Systems Corporation v. Comcast Cable Communications, LLC*, No. 20-1253 (Fed. Cir.)

*Promptu Systems Corporation v. Comcast Cable Communications, LLC*, No. 22-1093 (Fed. Cir.)

6. There are no organizational victims or bankruptcy case debtors or trustees in this appeal.

None/Not Applicable

Dated: December 21, 2022

*/s/ Mark A. Perry*

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
(202) 682-7000
Mark.Perry@weil.com

## TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

STATEMENT OF THE ISSUES ..... 3

STATEMENT OF THE CASE ..... 4

I. The ’196 Patent ..... 4

II. The ’538 Patent ..... 8

III. Proceedings Below ..... 10

A. The Parties’ Proposed Constructions ..... 11

B. The District Court’s Claim Construction Order ..... 12

1. Channel Limitations ..... 12

2. “Speech Recognition System Coupled to a Wireline Node” ..... 14

3. “Centralized Processing Station” ..... 15

SUMMARY OF ARGUMENT ..... 16

ARGUMENT ..... 21

I. Standards of Review ..... 21

II. The District Court Correctly Construed the Channel Limitations in the ’196 Patent ..... 22

A. “Channel” Refers to “a Single Band of Frequencies or a Designated Time Slot for Transmitting Signals” ..... 23

1. The District Court’s Construction Comports with the Intrinsic and Extrinsic Evidence ..... 23

2. Nothing Inside or Outside the Patent Supports Promptu’s Proposed Construction of “Channel” as a “Stream of Communications” ..... 27

B. “Back Channel” Refers to “a *Fixed* Band of Frequencies or Time Slot(s) for Transmitting Signals to a Speech Processing System or Engine” ..... 32

C. “Received Back Channel” Refers to “Data Received via the Back Channel” ..... 34

**TABLE OF CONTENTS**
(continued)

Page

D. A "Multiplicity of Received Identified Speech Channels" Requires that "Each Channel" Be "Assigned to a Particular User Site" ....... 36

E. Promptu's Various Criticisms Are Wrong ....... 39

1. The District Court's Construction Does Not Limit "Channel" to a Specific Format or Protocol ....... 39

2. Promptu's Judicial Estoppel Arguments Fail ....... 40

3. The District Court's Constructions of "Back Channel" and "Multiplicity of Received Identified Speech Channels" Are Not Inconsistent ....... 44

III. The District Court Correctly Construed "Speech Recognition System Coupled to a Wireline Node" in the '196 Patent ....... 45

A. "Speech Recognition System" Refers to "A System Whose Function Is Speech Recognition" ....... 45

1. The Ordinary Meaning of a "Speech Recognition System" Is a System Whose Function Is Speech Recognition ....... 45

2. Context Confirms the Ordinary Meaning ....... 48

3. Promptu's Contrary Arguments Lack Merit ....... 50

B. "Coupled to" Means "Connected in or Near" ....... 52

1. The Intrinsic Evidence Confirms that the "Speech Recognition System" Must Be "Connected in or Near" a "Wireline Node" ....... 52

2. Promptu's Overbroad Construction Flouts the Intrinsic Evidence ....... 54

C. "Wireline Node" Must Be Construed Consistent with the Patent's Express Definition ....... 57

1. The '196 Patent Expressly Defines "Centralized Wireline Node" ....... 57

**TABLE OF CONTENTS**
(continued)

Page

2. Promptu's Arguments Fail ........ 59

IV. The District Court Correctly Construed "Centralized Processing Station" in the '538 Patent ........ 61

A. The "Centralized Processing Station" Is "Located at a Cable Television Head-End Unit" ........ 61

1. The Intrinsic Evidence Supports the Court's Construction ........ 61

2. Promptu's Contrary Arguments Lack Merit ........ 63

B. The Centralized Processing Station "Performs" Voice Recognition ........ 65

V. This Court Should Affirm the Judgment of Noninfringement ........ 66

CONCLUSION ........ 66

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acme Scale Co. v. LTS Scale Co., LLC*,
615 F. App'x 673 (Fed. Cir. 2015) ....................47, 51

*Akazawa v. Link New Tech. Int'l, Inc.*,
520 F.3d 1354 (Fed. Cir. 2008) ....................31

*Apple Computer, Inc. v. Articulate Sys., Inc.*,
234 F.3d 14 (Fed. Cir. 2000) ....................54

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) ....................32

*Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*,
2011 WL 722937 (D. Del. Feb. 23, 2011)....................31

*Aventis Pharma S.A. v. Hospira, Inc.*,
675 F.3d 1324 (Fed. Cir. 2012) ....................27

*Chao v. Roy's Constr., Inc.*,
517 F.3d 180 (3d Cir. 2008) ....................41, 43

*Comcast Cable Commc'ns, LLC v. Promptu Sys. Corp.*,
838 F. App'x 551 (Fed. Cir. 2021) ....................*passim*

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*,
672 F.3d 1270 (Fed. Cir. 2012) ....................35

*Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*,
918 F.3d 928 (Fed. Cir. 2019) ....................52, 53

*Gillette Co. v. Energizer Holdings, Inc.*,
405 F.3d 1367 (Fed. Cir. 2005) ....................32

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................41

*Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*,
21 F.3d 1068 (Fed. Cir. 1994) ....................31

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
381 F.3d 1352 (Fed. Cir. 2004) ....................23

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021) ....................56

*Kumar v. Ovonic Battery Co.*,
351 F.3d 1364 (Fed. Cir. 2003) ....................60

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
959 F.3d 1091 (Fed. Cir. 2020) ....................52

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
243 F.3d 773 (3d Cir. 2001) ....................41

*Mycogen Plant Sci. v. Monsanto Co.*,
243 F.3d 1316 (Fed. Cir. 2001) ....................60

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................42, 43

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................*passim*

*Seachange Int'l, Inc. v. C-COR, Inc.*,
413 F.3d 1361 (Fed. Cir. 2005) ....................15, 64

*Shire Development, LLC v. Watson Pharms., Inc.*,
787 F.3d 1359 (Fed. Cir. 2015) ....................19, 46, 51

*Speedtrack, Inc. v. Endeca Techs., Inc.*,
524 F. App'x 651 (Fed. Cir. 2013) ....................41

*Starhome GmbH v. AT&T Mobility LLC*,
743 F.3d 849 (Fed. Cir. 2014) ....................22, 66

*In re Suitco Surface, Inc.*,
603 F.3d 1255 (Fed. Cir. 2010) ....................50

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 318 (2015)....................21, 27

*Trs. of Columbia Univ. in City of New York v. NortonLifeLock, Inc.*,
2019 WL 7040931 (E.D. Va. Dec. 20, 2019) .....................................................43

*Wisconsin Alumni Rsch. Found. v. Apple Inc.*,
905 F.3d 1341 (Fed. Cir. 2018) ...................................................................53, 63

**STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Rule 47.5, Appellees Comcast Corporation and Comcast Cable Communications, LLC state that no appeal in or from Case No. 2:16-cv-06516-JS in the United States District Court for the Eastern District of Pennsylvania was previously before this or any other appellate court.

This court has heard four previous appeals from IPR proceedings before the United States Patent and Trademark Office Patent Trial and Appeal Board ("Board") involving the two patents at issue, owned by Promptu Systems Corp. and asserted against Appellee Comcast Cable Communications, LLC. Case Numbers 19-2287 and 19-2288, captioned *Comcast Cable Communications, LLC v. Promptu Systems Corp.*, 838 F. App'x 551 (Fed. Cir. Jan. 4, 2021) (Moore, Lourie, Schall), are consolidated appeals from the Board in cases IPR2018-00344 and IPR2018-00345 concerning the '196 patent. Case Numbers 19-1947 and 19-1948, captioned *Comcast Cable Communications, LLC v. Promptu Systems Corp.*, 838 F. App'x 555 (Fed. Cir. Jan. 4, 2021) (Moore, Lourie, Schall) are consolidated appeals from the Board in cases IPR2018-00340 and IPR2018-00341 concerning the '538 patent.

Four companion appeals arising from other Board proceedings are presently pending before this Court, captioned *Promptu Systems Corp. v. Comcast Cable Communications, LLC*. Case Number 22-1093 is an appeal from IPR2018-00344, which concerns the '196 patent at issue in this case. Case Number 20-1253 is an

appeal from CBM2018-00034, which concerns U.S. Patent No. RE44,326. The '196 patent at issue in this case is the parent of the '326 patent. Case Numbers 19-2368 and 19-2369 are consolidated appeals from IPR2018-00342 and IPR2018-00343, also concerning the '326 patent. This Court has assigned these companion appeals to the same merits panel. *Promptu Systems Corp. v. Comcast Cable Communications, LLC*, No. 22-1939, Dkt. 22, at 3 (Fed. Cir. Dec. 6, 2022).

Promptu previously asserted the '326 patent in the district court proceeding, along with the '538 and '196 patents at issue. On June 13, 2022, Promptu stipulated to the dismissal with prejudice of its claims for infringement of the '326 patent. *Promptu Systems Corp. v. Comcast Corp.*, No. 2:16-cv-006516, Dkt. 316, at 1 (E.D. Pa. June 16, 2022). These related cases may directly affect or be directly affected by this Court's decision in the pending appeal. Counsel for Appellee is not aware of any other case that will directly affect or be directly affected by the Court's decision in this appeal.

## INTRODUCTION

Promptu sued Comcast in the Eastern District of Pennsylvania, alleging infringement of U.S. Patent Nos. 7,047,196 and 7,260,538 pertaining to voice control in a media network. After the district court construed key terms in Comcast's favor, Promptu stipulated to non-infringement and took this appeal. In this Court, Promptu challenges three sets of claim constructions: *first,* limitations related to the term "channel" ('196 patent); *second*, the phrase "speech recognition system coupled to a wireline node" ('196 patent); and *third*, the phrase "centralized processing station" ('538 patent). This Court should affirm the constructions and the resulting judgment of non-infringement.

*Channel limitations*. The district court correctly construed the claim term "channel" to mean "a single band of frequencies or a designated time slot for transmitting signals." Appx2. This construction accords with the intrinsic and extrinsic evidence, while Promptu's proposed alternative—that a channel is a "stream of communications"—does not. The court's constructions of the various channel limitations—"back channel," "received back channel," and "multiplicity of received identified speech channels"—similarly find support in the '196 patent and the field of art generally, whereas Promptu's litigation-driven arguments are at war with its own disclosures.

*Speech recognition system coupled to a wireline node.* The district court correctly concluded that 1) a "speech recognition system" is one "whose function is [actual] speech recognition," rather than myriad other things ancillary or tangential to speech recognition; 2) the patent uses "wireline node" as shorthand for the expressly defined term "centralized wireline node" throughout the patent; and 3) the patent uses the connector "coupled to" to describe a "proximity" relationship between the two. Appx15-18. Under Promptu's contrary view, any network could be a "speech recognition system" if it included speech recognition functions somewhere—rendering superfluous the patent's express definition of "centralized wireline node" as well as the "coupled to" limitation, destroying the advantages the patent claims to achieve over the prior art.

*Centralized processing station.* The district court construed the "centralized processing station" to mean, in relevant part, a "[d]evice at a cable-TV network head-end unit that . . . performs voice recognition . . . ." Appx3. That construction follows from the claim language—which identifies a centrally located and discrete object (i.e., "station") that performs speech recognition—as well as the specification, which locates the station at the cable head-end only. Promptu's suggestion that a "centralized processing station" can be located *anywhere* and do virtually *nothing* cannot be reconciled with the intrinsic evidence.

## STATEMENT OF THE ISSUES

1. Whether the district court properly construed the channel limitations in the asserted claims of the ’196 patent: (A) “*channel*” to mean “a single band of frequencies or a designated time slot for transmitting signals”; (B) “*back channel*” to mean “[a] fixed band of frequencies or time slot(s) for transmitting signals to a speech processing system or engine”; (C) “*received back channel*” to mean “[d]ata received via the back channel”; and (D) “[*m*]*ultiplicity of received identified speech channels*” to mean “[m]ultiple different channels carrying speech data, with each channel assigned to a particular user site.” Appx2.

2. Whether the district court properly construed the phrase “[*s*]*peech* [*r*]*ecognition system coupled to a wireline node*” as used in the asserted claims of the ’196 patent as a “a system whose function is speech recognition . . . connected in or near . . . a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node.” Appx2.

3. Whether the district court properly construed the term “*centralized processing station*” as used in the asserted claims of the ’538 patent as a “[d]evice at a cable-TV network head-end unit that receives and performs voice recognition on voice commands, and generates and returns instructions to set-top boxes to carry out the commands.” Appx3.

## STATEMENT OF THE CASE

Promptu asserted claims from the ’196 and ’538 patents against Comcast based on Comcast’s XFINITY® and X1 Entertainment Operating Systems®. Appx903; Appx905. The district court issued an order construing disputed claim terms. Appx1-3. Following the district court’s claim construction order, Promptu stipulated to non-infringement of all of the asserted claims, Appx9530, and the district court entered a final judgment of non-infringement. Appx22. This appeal follows.[1]

### I. The ’196 Patent

The ’196 patent, titled “System and Method of Voice Recognition Near a Wireline Node of a Network Supporting Cable Television and/or Video Delivery,” generally relates to “[a] method and system of speech recognition presented by a back channel from multiple user sites within a network.” Appx23 (Abstract).

The specification explains that “[a] major design objective for existing cable television set-top boxes was efficient downstream information delivery,” whereas “[p]rovision for upstream data transmission, i.e. from subscriber to cable plant, is much more restrictive, supporting only limited bandwidth.” Appx61, 2:60-65. “As

[1] In the proceedings below, Promptu also asserted claims from U.S. Patent No. RE44,326 but has since stipulated to the dismissal of those claims with prejudice. Appx22. Promptu does not include in this appeal any issues related to the ’326 patent.

new classes of interactive services become available," "sufficient upstream bandwidth must be made available." Appx61-62, 2:65-3:3. The specification further describes then-existing cable systems where "the transmission control protocol used . . . is one where an individual set-top box immediately transmits any pending request to the headend, without regard to whether or not the transmission channel is already in use." Appx62, 3:25-29. "This transmission control protocol is quite inefficient due to the number of collisions which ensue, e.g. simultaneous transmissions from different set-top boxes which interfere with one another, forcing all of the transmitters to repeat their transmissions again." Appx62, 3:33-37.

According to the specification, "[t]he invention comprises a multi-user control system for audio visual devices that incorporates a speech recognition system that is centrally located in or near a wireline node, and which may include a Cable Television (CATV) Headend." Appx63, 5:11-15. The specification discloses that "centralized wireline node refers to a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node," Appx61, 1:67-2:2, and thereafter repeatedly uses the term "wireline node," *see, e.g.*, Appx63, 5:11-15; Appx64, 7:42-47; Appx69, 18:20-23. By centrally locating the speech recognition functionality, the '196 patent purports to overcome bandwidth issues and help users locate and receive cable content more efficiently than in the prior art. Appx63, 5:3-10; Appx68, 15:1-15; Appx69, 17:35-54,

18:44-54. "This system is unique in that the speech command which originates at the user site . . . is sent upstream via the return path (often five to 40 MHz) in the cable system to a central speech recognition and identification engine" "capable of processing thousands of speech commands simultaneously and offering a low latency entertainment, information, and shopping experience." Appx63, 5:23-31.

Figure 10 depicts a flowchart of a preferred method in accordance with the invention, which "us[es] a back channel from a multiplicity of user sites containing a multiplicity of identified speech channels presented to a speech processing system at a wireline node." Appx64, 7:42-45; *see also* Appx71, 22:8-15, 22:43-51. Specifically, in this embodiment, the system first "receiv[es] the back channel to create a received back channel." Appx71, 22:18-19. Next, the system "partition[s] the received back channel into a multiplicity of received identified speech channels." Appx71, 22:25-26. The system then "performs processing [of] the multiplicity of the received identified speech channels to create a multiplicity of identified speech content." Appx71, 22:30-32. Finally, the system "respond[s] to the identified speech content to create an identified speech content response, for each of the multiplicity of the identified speech contents." Appx71, 22:38-40.




Appx35, Fig. 10. Figure 10 closely mirrors the language of claim 1 of the ’196 patent. Appx85-86.

Although the ’196 patent itself does not provide examples of what it means to “partition” a channel in its specification, it incorporates by reference and relies on related Application No. 09/664,874 to do so. *See* Br. 47 n.1. The ’196 patent is a continuation-in-part of the ’874 application. Appx61, 1:14-16. The ’874 application describes a purported improvement to bandwidth efficiency of transmission systems by using a “parallel transmission” model, in which a headend receiver can receive

data from all possible upstream channels simultaneously. Appx6924, Abstract. "Partitioning" is a process whereby the receiver allocates set-top boxes to "available upstream data channels." Appx6924, Abstract; Appx6912 at Claim 5. "By assigning a specific set-top box to a particular slot, it becomes possible for multiple set-top boxes to transmit in sequential slots, while assuring that the transmission packets do not collide." Appx6901, 4:23-5:2.

## II. The '538 Patent

The '538 patent, titled "Method and Apparatus for Voice Control of a Television Control Device," generally "relates to a voice-controlled set-top box and remote control for performing television related processes." Appx98, 1:15-17. Figure 1 of the '538 patent "is a diagram illustrating elements of the voice control television system according to the invention." Appx98, 2:52-53.




Appx92, Fig. 1. In Figure 1, remote speech processing occurs at the "centralized processing station" and "head-end unit," both referred to as block "160." Appx99, 4:7-10, 4:17-23.

The specification acknowledges that speech recognition processing and voice control systems existed in the prior art. Appx98, 1:19-62. But the specification discloses "[a] method and apparatus . . . for remotely processing voice commands" at "a cable head-end unit," Appx91 (Abstract), purportedly solving an identified problem in prior art systems—"requir[ing] a sophisticated voice recognition system in

close proximity to the user"—that made individual home devices "quite costly" to the consumer, Appx98, 1:59-62.

In the '538 patent, a user's voice command is transmitted "to a central processing station located at a cable television head-end unit[, which] processes the voice command for voice command recognition." Appx98, 2:31-34. "Once the voice command is determined a command function is created" and "transmitted back to the set-top box[, ] the set-top box performs the command function." Appx98, 2:34-38.

## III. Proceedings Below

In the proceedings below, the district court considered two separate rounds of claim construction briefs and corresponding hearings, each round of briefing consisting of two opening briefs and two responsive briefs. Each of the briefs was accompanied by an expert declaration.

The first round of briefing took place in March-April 2018, followed by a hearing on June 14, 2018. Prior to a ruling on claim construction, the case was stayed until September 2020, pending the outcome of related proceedings before the Patent Trial and Appeal Board.

The second round of briefing took place in December 2021-January 2022, followed by a hearing on February 24-25, 2022. On May 12, 2022, the district court issued the claim construction order now on appeal. Appx1-22.

### A. The Parties' Proposed Constructions

The following chart summarizes the parties' final positions regarding the claim terms at issue in this appeal:

| Claim Term | Comcast's Proposed Construction | Promptu's Proposed Construction |
|---|---|---|
| "back channel" ('196 patent) | "a fixed band of frequencies or time slot(s) for transmitting signals to a speech processing system or engine" | "stream of communications transmitted upstream from set-top boxes" |
| "received back channel" ('196 patent) | "Data received via the back channel" | "a back channel that has been received" |
| "multiplicity of received identified speech channels" ('196 patent) | "multiple different channels carrying speech data, with each channel assigned to a particular user site"<br><br>"channel" means "a single band of frequencies or a designated time slot for transmitting signals" | "plurality of streams of communications received by a speech processing system or engine identified as originating from specific user sites" |
| "speech recognition system coupled to a wireline node" ('196 patent) | "a speech recognition system connected in or near a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node," such that:<br><br>"speech recognition system" means "a system directed to speech recognition"; | "speech recognition system in communication with a wireline node," such that:<br><br>"speech recognition system" means "a system that performs speech recognition functions";<br><br>"coupled to" means "in communication with"; |

| Claim Term | Comcast's Proposed Construction | Promptu's Proposed Construction |
|---|---|---|
| | "coupled to" means "connected in or near";<br><br>"wireline node" means "a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node" | "wireline node" means "node connected by a wire, as opposed to a wireless connection" |
| "central/centralized processing station" ('538 patent) | "device at a cable-TV network head-end unit that receives and performs voice recognition on voice commands, and generates and returns instructions to set-top boxes to carry out the commands" | "portion of a cable television system at which voice commands are received and command functions are transmitted" |

*See* Appx6358-6407.

### B. The District Court's Claim Construction Order

After multiple rounds of briefing and argument, including expert declarations, the district court entered an order construing the disputed claims. Appx1-22.

#### 1. Channel Limitations

The district court construed "back channel" to mean "[a] fixed band of frequencies or time slot(s) for transmitting signals to a speech processing system or engine." Appx2. The court cited portions of Comcast's brief, which discussed the intrinsic evidence (Appx18 (citing Appx6427)), and the court credited Comcast's expert, who explained that a person of ordinary skill in the art ("POSITA") would

have understood that "[c]hannels in a communication path are the equivalent of lanes on a road: subdividing the path into channels/lanes allows traffic to flow more efficiently." Appx18 (citing Appx6481 ¶ 108[2]). The court found that Promptu's construction, by comparison, was unsupported by the intrinsic evidence and would render "channel" meaningless. Appx18-19.

Next, the district court construed "received back channel" to mean "[d]ata received via the back channel." Appx2. The court explained that the parties' constructions were "not truly substantively different," and that Comcast had agreed to a modest rewording in order to "accommodate Promptu's argument that receiving a channel means receiving the data transmitted on a channel."[3] Appx19-20.

The district court then construed "[m]ultiplicity of received identified speech channels" to mean "[m]ultiple different channels carrying speech data, with each channel assigned to a particular user site." Appx2. And it construed the term "channel" to mean "a single band of frequencies or a designated time slot for transmitting signals." Appx2. The district court concluded that dividing the back channel into a

---

[2] The quote itself comes from Comcast's brief (Appx6427), which paraphrases and cites to Comcast's expert Mr. Schmandt's declaration at paragraph 108.

[3] Comcast originally did not propose a construction for "received back channel." Comcast explained that "the only reason Comcast [proposed this] construction . . . was to accommodate *Promptu's* argument that receiving a channel means receiving the data transmitted on a channel." Appx8208. Comcast stated that it otherwise "takes no issue with Promptu's construction." *Id.*

multiplicity of speech channels requires partitioning as described in the ’874 application, which is incorporated by reference into the ’196 patent. Appx21.

#### 2. “Speech Recognition System Coupled to a Wireline Node”

The district court construed a “Speech Recognition system coupled to a wireline node” to mean “a system whose function is speech recognition . . . connected in or near . . . a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node.” Appx2.

First, the court explained that “a speech recognition system” is one “whose function is speech recognition.” Appx16. The court rejected Promptu’s alternative construction as overbroad because it “would sweep in larger systems that ancillarily perform speech recognition, while primarily performing other functions.” Appx16.

Second, the district court found, based on “the weight of the intrinsic evidence, including the abstract, the specification, and the claims,” that the phrase “coupled to” requires “some degree of proximity.” Appx17. The district court noted that the specification “requires the speech recognition system to be ‘centrally in or near’ the different [user] locations,” that “the claims themselves *only* contemplate the speech recognition system being coupled to the wireline node,” and that this Court had previously concluded that this limitation should not be construed “to entirely read out the proximity requirement.” Appx17 (citing *Comcast Cable Commc’ns, LLC v. Promptu Sys. Corp.*, 838 F. App’x 551, 553 (Fed. Cir. 2021)).

Last, the court construed "wireline node" as "a shorthand for 'centralized wireline node,'" a term expressly defined in the patent. Appx16.

**3. "Centralized Processing Station"**

The district court construed "central/centralized processing station" to mean a "[d]evice at a cable-TV network head-end unit that receives and performs voice recognition on voice commands, and generates and returns instructions to set-top boxes to carry out the commands." Appx3.

*Structurally*, the court concluded the "central[ized] processing station" is a discrete thing that is "located at the head end unit." Appx10. In addition to the plain language, the court cited the specification, which describes the "centralized processing station" only twice and both times situates it at the head-end unit and numerically designates both the centralized processing station and the head-end unit to be the same block 160 in Figure 1. Appx10-11. The terms "head end unit" and "centralized processing station" appear in alternative claims, and the court rejected Promptu's argument that they must mean different things because "claim differentiation cannot broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence." Appx11 (quoting *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005)).

*Functionally*, the court construed the phrase—“centralized processing station configured to *receive and process*” voice commands “by *applying* voice recognition to the second output to identify user-intended voice commands” (Appx104, 13:51-54 (emphasis added))—to mean that the centralized processing station must actually “perform” the voice recognition, as opposed to serving as a conduit that merely “send[s]” the voice commands “to a different component to perform voice recognition processing.” Appx11-12.

## SUMMARY OF ARGUMENT

**I.** The district court correctly construed each of the “channel” limitations of the ’196 patent—“back channel,” “received back channel,” and “multiplicity of received identified speech channels.”

**A.** The court correctly construed the underlying term “channel” to refer to “a single band of frequencies or a designated time slot(s) for transmitting signals.” Appx21. That is how the term is used in the ’196 patent and defined in contemporaneous technical dictionaries. Even Promptu’s expert concedes this is a common meaning. Appx2863 ¶ 51; Appx3630-3631, 208:17-209:1. Promptu, by comparison, proposes a definition of “channel”—a “stream of communications”—that its own expert calls “non-standard.” Appx3618, 158:14-25. The district court correctly rejected that non-standard definition because it is not supported by, and indeed is incompatible with, the ’196 patent specification.

The district court also correctly construed each individual channel limitation:

**B.** "Back channel" means "a fixed band of frequencies or time slot(s) for transmitting signals to a speech processing system or engine." Appx2; Appx19. There is no dispute that a "back channel" is for upstream communications, and the '196 patent consistently characterizes upstream communications as operating over a fixed band of frequencies or designated time slots (e.g., 5-40 MHz). *E.g.*, Appx61, 2:44-46; Appx62, 3:4-5, 21-24, 42-43; Appx6924-6925, Abstract. That repeated and consistent usage in the specification confirms the lower court's construction.

**C.** "Received back channel" means "data received via the back channel." Appx20. As the district court explained, there is no substantive difference between what Comcast proposed ("data received via the back channel") and what Promptu proposed ("a back channel that has been received"). Appx19. The parties' dispute as to this limitation turns on what "back channel" means, not on the additional element of "received."

**D.** A "multiplicity of received identified speech channels" means "multiple different channels carrying speech data, with each channel assigned to a particular user site." Appx20-21. That construction comports with the intrinsic evidence and the purpose of the '196 patent in solving limited upstream bandwidth.

**E.** Promptu's contrary arguments on appeal lack merit.

Promptu primarily argues that the district court's definition of "channel" as a fixed band of frequencies would exclude certain "protocols" (embodiments) described in the patent. But Promptu has not shown that any of the "protocols" identified in its brief are actually incompatible with the district court's construction, which mandates only "frequency bands" and not any particular "protocol."

Promptu also complains that the court's constructions differ from those advocated by Comcast in prior IPR proceedings. But the PTAB did not accept Comcast's proposals, and thus judicial estoppel does not apply. In any event, the IPRs were governed by the then-applicable "broadest reasonable interpretation" standard, whereas the district court proceedings followed the narrower *Phillips* standard; there was no inconsistency in Comcast's proposed constructions under the applicable standard in each tribunal.

**II.** The district court correctly construed "speech recognition system coupled to a wireline node" in the '196 patent as "a system whose function is speech recognition . . . connected in or near . . . a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node."

**A.** "Speech recognition system" refers to "a system whose *function* is speech recognition." Appx16 (emphasis added). When a noun like "system" is mod-

ified by a single adjectival phrase (like "email," "video game," or "speech recognition"), the adjectival phrase must pick up the content to which the system is directed, and not just an ancillary feature of that system. *See Shire Development, LLC v. Watson Pharms., Inc.*, 787 F.3d 1359, 1365-66 (Fed. Cir. 2015). Promptu's broader construction—"a system that performs speech recognition functions" (Appx15)—is inconsistent with the intrinsic evidence because it would expand "speech recognition system" to encompass any network in which speech recognition is merely incidental. Appx16.

**B.** "Coupled to" means "connected in or near" as a descriptor of the relationship between the "speech recognition system" and "a wireline node." Appx2. The specification consistently and repeatedly describes the "speech recognition system" as being "in," "near," or "at" a "wireline node." Appx23 (Abstract); Appx61, 1:26-28; Appx63, 5:12-13. That proximity promotes the patent's stated aim of improving upstream transmission efficiency despite bandwidth limitations. Promptu's contrary construction—"in communication with"—improperly dispenses with proximity entirely and cannot be squared with the intrinsic evidence.

**C.** "Wireline node" refers to "a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node." Appx2. The patent expressly defines "centralized wireline node," and thereafter uses "wireline node" as shorthand for the defined term throughout the

patent. Appx61, 1:67-2:2; Appx63, 5:11-15; Appx64, 7:42-47; Appx69, 18:20-23. Promptu's contrary construction renders this definition meaningless.

**III.** The district court correctly construed "centralized processing station" in the '538 patent to mean a "[d]evice at a cable-TV network head-end unit that receives and performs voice recognition on voice commands, and generates and returns instructions to set-top boxes to carry out the command." Appx3.

**A.** The "centralized processing station," by its terms, is a discrete and centrally located object (i.e., "station"), and the patent specification confirms that it resides at the "head-end unit." Appx98, 2:29-35; Appx99, 4:7-10, 4:17-23. Promptu argues that "centralized processing station" does not need to be located at the "head-end unit" because both terms are used in separate claims. Br. 65-68. But Promptu ignores that the two terms are used interchangeably and alternatively throughout the patent, and the construction accords with that intrinsic evidence.

**B.** As a matter of plain language in the claims, the "centralized processing station" must also "perform voice recognition"—because it is "configured to receive and process" voice commands. Appx104, 13:37-61, 14:37-64. Promptu incorrectly interprets the term "applying" in the claims to mean that voice commands can be passed through the centralized processing station and sent elsewhere for processing.

But the full phrase, not the individual word, makes clear that the centralized processing station must actually do something meaningful. That "something" is speech recognition.

The district court's constructions are correct, and thus the judgment of non-infringement should be affirmed.

## ARGUMENT

### I. Standards of Review

This Court "review[s] *de novo* the district court's ultimate interpretation of the patent claims," but applies "'clear error' review" to "subsidiary factfinding." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 329 (2015). The proper claim construction will be "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). The specification "is the single best guide to the meaning of a disputed term" and is usually "dispositive." *Id.* at 1315 (citation omitted). In particular, "the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor," in which case "the inventor's intention, as expressed in the specification, is regarded as dispositive." *Id.* at 1316 (internal citations omitted).

"Where, as here, a plaintiff concedes noninfringement by stipulation," this Court may simply "address the district court's construction of the pertinent claims"

and affirm the judgment if the constructions are correct. *Starhome GmbH v. AT&T Mobility LLC*, 743 F.3d 849, 854 (Fed. Cir. 2014).

## II. The District Court Correctly Construed the Channel Limitations in the '196 Patent

The district court construed three claim limitations reciting the word "channel," in addition to the word "channel" itself: "back channel," "received back channel," and "multiplicity of received identified speech channels." Appx2; *see supra* p. 11 (chart setting out parties' constructions). The district court correctly construed: (A) "*channel*" to mean "a single band of frequencies or a designated time slot for transmitting signals"; (B) "*back channel*" to mean "[a] fixed band of frequencies or time slot(s) for transmitting signals to a speech processing system or engine"; (C) "*received back channel*" to mean "[d]ata received via the back channel"; and (D) "*multiplicity of received identified speech channels*" to mean "[m]ultiple different channels carrying speech data, with each channel assigned to a particular user site." Appx2.

The district court's constructions of the "channel" limitations correctly reflect how the terms are used in the claims and specification, as well as contemporaneous technical dictionaries. Expert testimony confirmed that a person of skill in the art would have understood the terms in accordance with these constructions.

### A. "Channel" Refers to "a Single Band of Frequencies or a Designated Time Slot for Transmitting Signals"

#### 1. The District Court's Construction Comports with the Intrinsic and Extrinsic Evidence

The district court correctly found that in the field of art (media networks), a "channel" refers to "a single band of frequencies or a designated time slot for transmitting signals." Appx18; Appx21. The '196 patent adopts this common meaning through its consistent descriptions of channels, including in the incorporated-by-reference '874 application. The intrinsic and extrinsic evidence uniformly support the court's construction.

##### i. Intrinsic Evidence Confirms the District Court's Construction

The term of art "channel" as it appears in the '196 patent should carry its common meaning in the relevant field. Where a patentee chooses to use such a term of art, it is presumed to have its accustomed meaning unless the patent defines it differently. *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1355 (Fed. Cir. 2004). It is undisputed that the district court's construction is a common meaning of "channel" in the relevant field of art. Appx2863 ¶ 51; Appx3630-3631, 208:17-209:1. The '196 patent does not define or use the term "channel" in any way that would depart from this meaning. The term therefore carries its common meaning in

the relevant field: "a single band of frequencies or a designated time slot for transmitting signals." This construction is confirmed by the use of "channel" in the '196 patent's specification.

*First*, the '196 patent consistently describes a channel as a band of frequencies for transmitting signals. *E.g.*, Appx62, 3:42-43 ("Downstream control data transmission typically occurs in a *separate frequency band from the upstream channels*."); Appx82, 44:37-39 ("Each NTSC television *channel has approximately 6 MHz of bandwidth*, . . . ."); Appx82, 44:17-20 (referring to "chang[ing] the *channel frequency bands of all the channels* . . . .") (emphases added). Further, the '196 patent describes the "back channel" as often being the "five to 40MHz" frequency band. *See* Appx66, 12:21-26 ("The speech signal transmitted from a subscriber's set-top box . . . is received 1510 by the *five to 40 MHz data receiving equipment* within gateway 3100 in the central location."); Appx63, 5:22-26 ("This system is unique in that the speech command . . . is sent upstream via *the return path (often five to 40 MHz)* in the cable system to a central speech recognition and identification engine.") (emphases added).

*Second*, although the term "channel" is most commonly used to refer to frequency bands, the '196 patent also describes channels formed from designated time slots via time-division multiplexing. *E.g.*, Appx76, 31:33-35 ("The multiplexing mechanism onto channel 1332 may perform *time division multiplexing*.") (emphasis

added); *see also* Appx78, 35:22-25, 36:59-62; Appx79, 38:36-39; Appx80, 39:32-36; Appx81, 41:64-66 (similar discussions of TDM).

The intrinsic evidence thus supports the district court's construction of "channel" as "a single band of frequencies or a designated time slot for transmitting signals." Appx2.

**ii. Extrinsic Evidence Further Confirms the District Court's Construction**

The extrinsic evidence likewise confirms that "channel" means "a single band of frequencies or a designated time slot for transmitting signals" in the context of the invention.

*First*, technical dictionary definitions of "channel" from the time of the '196 patent support the district court's construction:

- McGraw-Hill Dictionary of Scientific and Technical Terms (6th Ed., 2003): "1. A band of radio frequencies allocated for a particular purpose; a standard broadcasting channel is 10 kilohertz wide, a television channel 6 megahertz wide." Appx2783.
- Illustrated Dictionary of Electronics (8th Ed., 2001): "1. A frequency (or band of frequencies) assigned to a radio or television station." Appx2787.
- McGraw-Hill Illustrated Telecom Dictionary (1998): "One segment or time-slot in a broadband communications transmission." Appx2695.

- IEEE Standard Dictionary of Electrical and Electronics Terms (6th Ed., 1996): "(7) A band of frequencies dedicated to a certain service transmitted on the broadband medium." Appx2724; Appx6729.

This Court has held that "dictionaries, and especially technical dictionaries," assist "in determining the meaning of particular terminology to those of skill in the art of the invention." *Phillips*, 415 F.3d at 1318. Here, the technical definitions weigh heavily in Comcast's favor.

*Second*, the district court considered expert testimony regarding how a person of ordinary skill in the art would have understood the word channel. Appx18 (citing Appx6481 ¶ 108)). Mr. Schmandt, Comcast's expert, described the term "channel" in the field of media networks as follows:

> Whether using frequency or time to divide a particular communication path (e.g., a coaxial cable) into channels, channels in a communication stream are akin to lanes in a stream of traffic. Lanes are helpful because they can divide a road into sub-parts, such that traffic can share the road while avoiding collisions. When traffic "sticks to its lane," more cars can travel more efficiently with fewer collisions than would occur on a road of equivalent width that lacks lane dividers. So too with communication channels. . . . A communication path without channels would be like a wide road without lane markers, where the cars could simply drive wherever they wish.

Appx6481 ¶ 108. Promptu's own technical expert *conceded* that Mr. Schmandt's construction reflects a "common meaning of 'channel'" in the relevant art. Appx2863 ¶ 51; Appx3630-3631, 208:17-209:1. This district court properly exercised its "discretion to take [that] expert testimony into account" and concluded that

Comcast's view better reflects "the ordinary meaning of a claim term to one skilled in the art." *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1331 (Fed. Cir. 2012). That factual determination was not clearly erroneous. *See Teva Pharms.*, 574 U.S. at 331-32.

#### 2. Nothing Inside or Outside the Patent Supports Promptu's Proposed Construction of "Channel" as a "Stream of Communications"

Promptu proposes that a "channel" is a "stream of communications." Br. 23, 26. In other words, according to Promptu, "channel" refers to the data being transmitted rather than the path for data transfer. Promptu's construction enjoys no support in the intrinsic evidence, and even Promptu's expert, Dr. Shamos, admitted it is "different from the way one ordinarily might understand" the word "channel." Appx3616, 156:10-22. This Court should reject Promptu's proposed deviation from the plain meaning, which was created for litigation rather than grounded in the patent or technology.

##### i. Promptu's Proposed Construction Lacks Intrinsic Support

Promptu's alternative construction of "channel" conflates "data" with the frequencies over which the data are transmitted, but the patent distinguishes between these two concepts. *E.g.*, Appx62, 3:42-43 ("Downstream control *data* transmission typically occurs in a *separate frequency band from the upstream channels*.");

Appx63, 5:22-26 ("[T]he *speech command* . . . is sent upstream via *the return path (often five to 40 MHz)* . . . .") (emphases added).

Nothing in the patent supports Promptu's proposed construction of "channel." In this Court, Promptu relies almost entirely on a single paragraph from the top of column 30 of the '196 patent:

> Uplink 1204 communication includes a back channel. This back channel includes multiple identified speech channels from multiple user sites (STBs) 1100, as shown in FIGS. 21 and 22. Receiver 1322 provides 1326 a back channel to speech engine 1330. Speech engine 1330 performs at least the operations of FIG. 10.

Appx75, 30:4-9 (cited at Br. 25-26). But Promptu never explains *how* this language, the related figures, or any of the corresponding descriptions support its view of the "back channel" as a "stream of communications" rather than a path for transmitting data. On the contrary, Promptu's expert admitted that a POSITA reading this portion of the specification "would probably say, oh, the back channel is the transport mechanism, not the content." Appx3625-3626, 184:10-185:16. In fact, even Promptu recognizes in its brief that speech data "are sent *over* the back channel to a speech recognition system." Br. 26-27 (emphasis added). Consistent with the intrinsic evidence, and as a matter of common sense and plain meaning, the data are not the channel.

Promptu also appears to rely on Figures 24 and 29—neither of which were discussed in its briefing below—as purportedly showing a "back channel" (Br. 28-

29), but neither the figures nor their descriptions provide any guidance as to the meaning of "back channel" or "channel" in the '196 patent. Indeed, Figure 29 merely depicts the internal operation of speech engine 1330 with back channel 1326 as an input. Appx75, 30:29-32.[4]

Finally, Promptu's proposed construction is not just unsupported by the intrinsic evidence, it is *incompatible* with it. For example, the '196 patent describes prior art systems transmitting data "without regard to whether or not the transmission channel is already in use," which can lead to "typical channel utilization on the order of just 30%." Appx62, 3:25-29, 3:33-38. It also describes "frequency-hopping to avoid channels which are subject to interference." Appx62, 3:13-15. The ideas of "channel utilization" and changing frequency to avoid a channel make sense if the channel is a frequency band, but they do not make sense if the channel is data.

#### ii. Promptu's Proposed Construction Lacks Extrinsic Support

Promptu purports to have identified three pieces of extrinsic evidence that support its view of "channel" as a "stream of communications." Br. 33-36. But none of the evidence cited actually supports Promptu's position.

---

[4] Except for item 1326, there is no disclosure that the portion of Figure 29 highlighted by Promptu is a back channel.

*First*, Promptu cites a 1998 publication from the European Broadcasting Union defining "back channel" as "[t]he segment of a two-way communications system that flows from the consumer back to the Content provider, or to a system component, to provide feedback." Br. 33-34 (citing Appx7597). But this definition treats "channel" as a path for transmitting data, and not the data or a "stream of communications." This definition refers to what the '196 patent calls "uplink 1204." *See* Appx64, 8:24-27 (describing "wireline physical transport 1200 further comprised of downlink coupling 1202 and uplink coupling 1204"). And as quoted by Promptu, the uplink coupling 1204 "*includes* a back channel." Br. 26 (emphasis added). This definition is thus inconsistent with "back channel" as used in the specification. Furthermore, there is no requirement that the "back channel" in the '196 patent flow to a "content provider" or "provide feedback."

*Second*, Promptu cites a definition from the IEEE Standard Dictionary from 1996 defining "channel" as "communication paths including '[a] means of one-way or two-way transmission . . . ,' '[a] logically independent data path between two Functions,' and '[a] one-way path for transmission of signals between two or more points; for example, a data channel.'" Br. 34 (quoting Appx6729); *see also* Appx2724. But these definitions are entirely consistent with Mr. Schmandt's testimony that a "channel" is a "path." And, again, these definitions could describe the "uplink 1204," which "*includes* a back channel."

*Third,* Promptu cites a decision from the UK Patents Court, construing "back channel" to mean "a channel suitable to carry a multiplicity of speech signals from multiple set-top boxes to the wireline node." Br. 36 (quoting Appx7776 ¶ 147). It is true that the UK Patents Court did not construe "channel" as limited to "fixed frequencies or time slots." *Id.* But neither did that tribunal embrace Promptu's view of "channel" as nothing more than data or a "stream of communications." After all, a "channel suitable to carry" signals treats "channel" as a path for transmitting data, and *not* as a "stream of communications."

In any event, the decision by a foreign court, applying foreign law, to a different claim in a different patent is quadruply irrelevant. *See Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 2011 WL 722937, at *5 (D. Del. Feb. 23, 2011) (Stark, J.) ("[C]onstructions offered by another court, applying foreign law, have little relevance to that determination."); *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1072 n.2 (Fed. Cir. 1994) ("[T]he theories and laws of patentability vary from country to country, . . . ."). Promptu *says* that the UK tribunal applies something akin to the *Phillips* standard (Br. 35), but did not make any such showing in the court below. *See Akazawa v. Link New Tech. Int'l, Inc.*, 520 F.3d 1354, 1358 (Fed. Cir. 2008) (noting that matters of foreign law "are best described by the district court in the first instance" (internal citations omitted)).

Promptu cites some cases involving foreign proceedings (Br. 34-35), but fails to mention that those cases involved limiting representations made by the *party-patentee* during patent *prosecution*. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1312 (Fed. Cir. 2014); *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005). Here, by contrast, Promptu is relying exclusively on the statements of the foreign tribunal, *not Comcast's* statements. That reliance is misplaced.

### B. "Back Channel" Refers to "a *Fixed* Band of Frequencies or Time Slot(s) for Transmitting Signals to a Speech Processing System or Engine"

The term "back channel" refers to "a *fixed* band of frequencies or time slot(s) for transmitting signals to a speech processing system or engine." Appx2 (emphasis added); Appx19. "Fixed" means that "[b]ack channels are set; they aren't redefined every time a set-top box sends a message, which is what Promptu's proposal allows." Appx6427.

The district court's construction offers the best account of the term's usage in the claims. Claim 1, for example, recites the step of "partitioning" a "received back channel into a multiplicity of received identified speech channels." Appx85-86. The only example of "partitioning" in the specification appears in the related '874 application, which describes that a head-end may "examine[] the RF spectrum to determine which frequencies are available" then "partition[] the set-top boxes . . . . That is, the boxes are assigned a transmission channel." Appx6924-6925, Abstract. In

other words, the back channel is a band of frequencies (RF spectrum) that can be partitioned into speech channels (assigned transmission channels).

Likewise, the specification repeatedly makes clear that, as part of the architecture of a cable system, upstream communications are transmitted over a fixed or reserved frequency band. In the "Background of the Invention," the '196 patent teaches that "most cable systems *reserve* some of the 88 to 108 MHz FM spectrum for [upstream] set-top data transmission." Appx61, 2:44-46 (emphasis added); *see also* Appx62, 3:42-43 ("Downstream control data transmission typically occurs in a separate frequency band from the upstream channels."). In "[o]ne of the most popular digital set-top boxes" at the time, "[u]pstream signals in the *5 to 40 MHz band* from each subscriber connected to the node are . . . sent to the Headend." Appx62, 3:4-5, 21-23 (emphasis added). In the "Summary of the Invention," the '196 patent states that "[t]his system is unique in that the speech command which originates at the user site . . . is sent upstream via *the return path (often five to 40 MHz)* in the cable system to a central speech recognition and identification engine." Appx63, 5:22-26 (emphasis added); *see also* Appx66, 11:15-18, 12:21-24 (referring to upstream transmissions on the "5 to 40 MHz" return path). By contrast, the specification gives *no examples* in which upstream communications are transmitted over an un-fixed or dynamic frequency.

The district court's construction of "back channel" should therefore be affirmed.

### C. "Received Back Channel" Refers to "Data Received via the Back Channel"

The district court construed "received back channel" to mean "data received via the back channel." Appx20. The district court explained that this construction was not "substantively different" than Promptu's proposed construction—"a back channel that has been received." Appx19. Under either view, a "received back channel" requires both (1) data and (2) a "back channel" for the transmission of those data. Appx8208. Because Promptu fails to identify any material difference between its proposed construction and the one accepted by the district court, this Court should affirm.

Promptu contends that the district court's construction of "received back channel" conflicts with this Court's construction, in a previous IPR appeal, that a "received back channel" as used in the '196 patent is "merely the 'back channel' after being received." Br. 40-41 (citing *Comcast*, 838 F. App'x at 554). Promptu's contention is misguided for two reasons.

*First*, this Court's prior construction was "[u]nder the broadest reasonable interpretation standard," *Comcast*, 838 F. App'x at 554, which does not apply to this proceeding. This Court recognized that other constructions (including the one advanced by Promptu below, which is not materially different than what the district

court adopted) would be reasonable. *See id.* ("One *may* read the 'received back channel' as merely the 'back channel' after being received." (emphasis added)). The district court, under the narrower *Phillips* standard, adopted a construction that is a reasonable subset of the broadest reasonable interpretation previously approved by this Court. Here and elsewhere, Promptu fails to recognize that there is no inconsistency between a broader construction (under the BRI standard) and a narrower construction (under the *Phillips* standard) that is encompassed within that broader construction.

*Second*, Promptu's real complaint appears to be the reference to "data" in the district court's construction. But Promptu cannot point to any substantive difference between that construction and the alternative it proposed when considering the claims as a whole. Accordingly, any error (and to reiterate, there is none) in including "data" in the construction is necessarily harmless. *See Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1280 (Fed. Cir. 2012) (finding harmless error where the district court erroneously added a limitation to its construction of "registration server," but the erroneously added limitation was still required by the claims).

Promptu also argues that the district court's construction of "received back channel" "highlights the flaws" of the other channel limitations, which require a "physical channel." Br. 41. Promptu claims that the district court's constructions

would require "a fixed band of frequencies or time slots" (back channel) to be "converted to data" for the received back channel then "converted back" for the speech channels. *Id.* Promptu's argument is a strawman. The channels *carry* data; they are not converted into data. Neither the court's constructions nor the surrounding claim language requires otherwise.

In sum, there is no substantive difference between the district court's construction of "received back channel" and Promptu's proposed construction, and there is no tension in the construction of "received back channel" reciting both a channel and data. Whether a "received back channel" includes the data in the back channel or is just the back channel itself, the operative dispute remains whether a "back channel" is a "a fixed band of frequencies or designated time slot(s) for transmitting to a speech processing system or engine."[5]

### D. A "Multiplicity of Received Identified Speech Channels" Requires that "Each Channel" Be "Assigned to a Particular User Site"

The district court correctly construed "multiplicity of received identified speech channels" to mean "multiple different channels carrying speech data, with each channel assigned to a particular user site." Appx21; Appx2. This construction,

[5] Moreover, if the Court discerns any tension between the constructions of "back channel" and "received back channel," it should strike the data requirement, not the channel requirement, from the meaning of "received back channel." The accused devices still would not infringe.

which requires a one-to-one correspondence between "received identified speech channels" and user sites, best comports with descriptions in the intrinsic evidence and the patent's stated aim.

*First*, the district court's construction is consistent with how the '196 patent describes that speech channels are created. As noted by the district court, the claims require "dividing the back channel into a 'multiplicity of received identified speech channels' and such 'multiplicity of received identified speech channels' is from a 'multiplicity of user sites.'" Appx21. This dividing (partitioning) process to "optimize[] upstream communication" is not discussed in the '196 patent itself, but it *is* described in the '874 application, which is incorporated by reference. Appx74, 27:48-54, 27:66-28:3, 28:12-16, 28:37-43, 28:61-65; Appx75, 29:8-12. The '874 application teaches "a slotted assignment system which assigns each of said one or more set-tops boxes [sic] a specific transmission slot, wherein each slot comprises a specific slice of time used to transmit information." Appx6913, 16:5-8; *see also* Appx6906-6907, 9:23-10:3 ("A reserved time slot allows a modem to transmit a known amount of information in a known period. However, if the modem does not wish to use the time slot, the time slot is not available for use by anyone else . . . .").

*Second*, the district court's construction makes sense in view of the stated goal of the '196 patent to improve limited upstream bandwidth, for which the partitioning scheme described in the '874 application is taught as a solution. The '196 patent

states that cable networks were designed for "efficient downstream information delivery," but upstream transmission "is much more restrictive, supporting only limited bandwidth." Appx61, 2:60-65. In then-existing set-top boxes, upstream communications often used "inefficient" transmission protocols, such as "Aloha." Appx62, 3:25-41. With the Aloha protocol, "an individual set-top box immediately transmits any pending request to the headend, without regard to whether or not the transmission channel is already in use." Appx62, 3:26-29. In other words, there could be multiple user sites transmitting on a single channel. *See* Appx6487 ¶ 118 (noting that Aloha used non-partitioned back channels). The '196 patent states that this "is quite inefficient due to the number of collisions which ensue, e.g. simultaneous transmissions from different set-top boxes which interfere with one another, forcing all of the transmitters to repeat their transmissions again," leading to "typical channel utilization on the order of just 30%." Appx62, 3:33-38. The partitioning scheme described in the '874 application is taught as a purported solution to this problem. *E.g.*, Appx6901-6902, 4:23-5:2 ("By assigning a specific set-top box to a particular slot, it becomes possible for multiple set-top boxes to transmit in sequential slots, while assuring that the transmission packets do not collide.").

Promptu argues that "[t]he '196 patent exhibits no intent to incorporate a specific partitioning scheme into the claims" (Br. 48), but the '196 patent itself does not describe *any* type of partitioning and instead expressly refers to the incorporated-by-

reference ’874 application for the disclosure of “optimized upstream communication.” Appx74, 27:48-54, 27:66-28:3, 28:12-16, 28:37-43, 28:61-65; Appx75, 29:8-12. There is no disclosure anywhere in the patent specification as to how *or why* one would use a single speech channel for multiple user sites, as Promptu’s construction would allow.

The intrinsic evidence thus supports the district court’s construction of “multiplicity of received identified speech channels” as “multiple different channels carrying speech data, with each channel assigned to a particular user site.” Appx21; Appx2.

### E. Promptu’s Various Criticisms Are Wrong

Unable in this Court, as below, to support its own proposed constructions with the intrinsic or extrinsic evidence, Promptu launches a hodge-podge of attacks on the district court’s reasoning. None withstands scrutiny.

#### 1. The District Court’s Construction Does Not Limit “Channel” to a Specific Format or Protocol

Promptu contends repeatedly that the term “channel” is not limited to a particular physical format or communications protocol, and that Comcast’s construction therefore excludes certain embodiments in the patent. *See, e.g.*, Br. 23 (“The intrinsic record does not place any significance on the physical format of these streams, the network protocols by which they are sent . . . .”); *id.* at 25, 27, 29-31, 44. These criticisms are wrong. The district court’s construction of “channel” is not limited to

a particular format or protocol, and does not affirmatively exclude any of the described embodiments.

To be clear, the district court's construction does not mandate a protocol; it mandates "a single band of frequencies or a designated time slot for transmitting signals." Appx2. Comcast's expert addressed many of the listed protocols in the proceedings below and explained that they "use[] frequency bands and would thus be covered by the traditional understanding of 'channel'—i.e., a band of frequencies or time slots for transmitting signals." Appx8213-8215 ¶¶ 4-6. Promptu identifies in its brief various "formats" (Br. 28), "protocols" (Br. 28, 31) or "mode[s] of transmission" (Br. 30). Yet it did not establish below, and does not even try to do so in this Court, that any of them are incompatible with the district court's construction. That failure is dispositive.[6]

### 2. Promptu's Judicial Estoppel Arguments Fail

Promptu contends that Comcast should have been judicially estopped from proposing its constructions for "back channel" and "received identified speech channels" because Comcast previously proposed different constructions for these terms

---

[6] Promptu also claims that "the back channel may traverse multiple networks in myriad formats or protocols along its path." Br. 30. This argument—which did not appear in Promptu's briefing below—is a purely hypothetical situation *never* actually recited or described in the specification. Promptu's misleading citations do not prove otherwise. *See* Appx65, 9:65-10:13. Nor has Promptu explained how the court's construction would exclude this hypothetical.

in IPR proceedings. Br. 32-33, 49. Judicial estoppel "is reviewed under the law of the regional circuit in which the trial court sits." *Speedtrack, Inc. v. Endeca Techs., Inc.*, 524 F. App'x 651, 657 (Fed. Cir. 2013). In the Third Circuit, judicial estoppel is "an extreme remedy," *Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008), "reviewed only for abuse of discretion." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001). Promptu's judicial-estoppel theories fail for multiple reasons.

Promptu forfeited these arguments by failing to present them to the district court below. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("[A] position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances."). While Promptu invoked estoppel for the term "*received* back channel," Appx7040, it did not preserve this argument for "back channel" or "received identified speech channels." Appx7036-7038; Appx7040-7041; *see also* Appx19 n.14 (noting Promptu's *sole* estoppel argument).[7] Because Promptu did not raise the issue, the district court was never given an opportunity to exercise its discretion. Accordingly, Promptu cannot now argue on appeal that the district court abused its discretion.

[7] Promptu asserted judicial estoppel for "back channel" in its *responsive* brief, Appx7976, but the district court did not address this untimely argument.

In any event, judicial estoppel does not apply to either claim construction for at least four reasons.

*First*, Comcast's current positions are not "clearly inconsistent" with its previous positions, *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). For one, Comcast's IPR claim construction proposals were made under the "broadest reasonable interpretation" standard, which is different than the *Phillips* standard applied by the district court. Accordingly, Comcast's proposed construction of "back channel" in the IPR—"upstream communication channel delivering signals from multiple user sites to a central wireline node," Appx7995—subsumes the district court's narrower construction—"[a] fixed band of frequencies or time slot(s) for transmitting signals to a speech processing system or engine." Appx2. Finally, Comcast could not have taken a "clearly inconsistent" position based on its earlier construction of the term "partitioning," Br. 48-49, because the construction of "partitioning" was not at issue before the district court. *See* Appx1-3.

*Second*, Comcast did not "succeed[]" in either of its earlier claim constructions, as required for judicial estoppel. *New Hampshire*, 532 U.S. at 750. In its final written decision, the Board construed just "two phrases recited in the challenged claims"—neither of which was back channel or received identified speech channel—and it declined to "construe any other claim terms or phrases in this proceeding." Appx8014. The Board thus did not adopt Comcast's proposed constructions. Judicial

estoppel does not apply to positions advanced by a litigant but not accepted by the tribunal.

*Third*, there is nothing "unfair" about Comcast pursuing broader constructions in an IPR than in district court, *New Hampshire*, 532 U.S. at 751, given that the two proceedings are governed by different standards. Comcast's district court proposals are all subsets of its IPR proposals, as one would expect given the narrower *Phillips* standard.

And, *fourth*, Promptu offers no showing that Comcast took its positions "in 'bad faith.'" *Chao*, 517 F.3d at 186 n.5. A litigant is not just entitled but obligated to take into account the governing standard in making proposals to a tribunal. Under settled precedent, judicial estoppel does not apply.

The unpublished district court decision on which Promptu relies is inapposite. Br. 32, 49 (citing *Trs. of Columbia Univ. in City of New York v. NortonLifeLock, Inc.*, No. 3:13CV808, 2019 WL 7040931, at *3-6 (E.D. Va. Dec. 20, 2019)). In *Nor-tonLifeLock*, the defendant prevailed in earlier proceedings through an argument that directly contradicted its later position. This case is the opposite.

### 3. The District Court's Constructions of "Back Channel" and "Multiplicity of Received Identified Speech Channels" Are Not Inconsistent

Promptu contends that the district court's constructions of "back channel" and "speech channel"[8] are inconsistent because they reflect different definitions of the word "channel"; one construction refers to a "*fixed* band of frequencies," and the other refers to "a *single* band of frequencies." Br. 45-46 (emphasis added). As explained above, however, a "*back* channel" must be "fixed" based on that term's usage in the patent; likewise, a "speech channel" must carry speech data and be "assigned to a particular user site" based on its usage. While the term "channel" is consistent between them (i.e., a band of frequencies), the different types of channels (back or speech) may have different characteristics (i.e., having a fixed band or being assigned to a user site). The use of adjectival modifiers differentiates these two kinds of channels within the claims.

* * *

In sum, Promptu has offered no grounds to disturb the district court's constructions of the channel terms, which are supported by the intrinsic and extrinsic evidence.

[8] There was no construction of "speech channel." The court construed the phrase "multiplicity of received identified speech channels" and the term "channel."

## III. The District Court Correctly Construed "Speech Recognition System Coupled to a Wireline Node" in the '196 Patent

The district court construed the three-part phrase "[1] speech recognition system [2] coupled to [3] a wireline node" to mean the following: "[1] a system whose function is speech recognition . . . [2] connected in or near . . . [3] a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node." Appx2. Because that construction is compelled by the plain language, the specification, and the patent's express definitions, this Court should affirm.

### A. "Speech Recognition System" Refers to "A System Whose Function Is Speech Recognition"

The plain meaning of "speech recognition system" is "a system whose function is speech recognition," and the specification confirms that the patent uses the phrase in this directed and circumscribed sense. As the district court explained, the phrase does *not* encompass any "systems that ancillarily perform speech recognition, while primarily performing other functions." Appx16.

#### 1. The Ordinary Meaning of a "Speech Recognition System" Is a System Whose Function Is Speech Recognition

A "speech recognition system" is "a system whose function is speech recognition." Contrary to Promptu's contention, that plain meaning does *not* encompass broader systems directed to myriad other functions and whose speech-recognition capabilities are entirely ancillary to those predominant functions. The *system itself*—

and not just a subcomponent within the system—must be directed to speech recognition. And while the broader system may include speech recognition as among its various capabilities, that capability (or "sub-system") alone does not render the entire system a "speech recognition system" in the ordinary sense.

Consider commonplace examples: an "email system" is a system whose function is to facilitate sending and receiving emails, just as a "video game system" is one whose function is to facilitate video game playing. A smartphone can perform those same operations, but no one would confuse the smartphone *itself* for an "email system" or "video game system." When a noun like "system" is modified by a single adjectival phrase (like "email," "video game," or "speech recognition"), the adjectival phrase must pick up the content to which the system is directed and not just an ancillary feature.

This Court made this point in *Shire,* 787 F.3d at 1365-66, when interpreting a similar phrase. Interpreting the words "lipophilic matrix," this Court explained that "the *matrix—not just an excipient within the matrix*—must exhibit the . . . lipophilic characteristic." *Id.* at 1365 (emphasis added). A "lipophilic *matrix*," this Court stressed, "is more than just a matrix with at least one lipophilic *excipient*"; instead, "the matrix itself must exhibit lipophilic characteristics." *Id.* at 1365-66 (emphases

in original). This case is no different: it is not sufficient that a system merely encompass a subcomponent that performs speech recognition, rather the system *itself* must be directed to speech recognition.

Promptu's contrary definition—"a system that performs speech recognition"—would impermissibly expand "speech recognition system" to encompass networks in which speech recognition is nothing more than a small, "ancillar[y]," and/or incidental part. Appx16. By Promptu's definition, a user's remote control is a "speech recognition system" so long as it receives and forwards a user's voice commands, and a coaxial cable that runs into a user's home is also a "speech recognition system" whenever it relays a user's voice command (along with *terabytes* of unrelated data). Indeed, according to Promptu's definition, *the entire cable TV architecture* is a "speech recognition system" because it may perform speech recognition functions among hundreds or thousands of others. *See Acme Scale Co. v. LTS Scale Co., LLC*, 615 F. App'x 673, 679-80 (Fed. Cir. 2015) (holding that "[t]he broadest reasonable construction of the term 'material handling vehicle' is limited to a device . . . *whose function is* to transport the material to be measured," and rejecting as "overly broad" a construction that would also sweep in objects "primarily intended to be stationary"). In the context of the asserted claims, the district court was correct to reject that overbroad construction.

### 2. Context Confirms the Ordinary Meaning

The ’196 patent includes multiple contextual cues confirming that “speech recognition system” means “a system whose function is speech recognition.”

Start with the claim language. All of the functions of the “speech recognition system” actually recited in the claims concern speech recognition. Claim 27, for example, recites “partitioning said received back channel into a multiplicity of received identified speech channels,” “processing said multiplicity of said received identified speech channels to create a multiplicity of identified speech content,” and “responding to said identified speech content to create an identified speech content response.” Appx88, 55:9-36. That the claims describe speech recognition functions and nothing else indicates that the “speech recognition system” must be “directed to” speech recognition and not myriad other functions.

The specification fortifies that conclusion in multiple ways. For one thing, the “Summary of the Invention” specifically distinguishes between the *broader* “multi-user control system for audio visual devices” and the *narrower* “speech recognition system” that is “*incorporate[d]*” within the broader system. Appx63, 5:11-15 (emphasis added). That phrasing makes clear that the “speech recognition system” does *not* encompass the various components of the multi-user control *system*—like the remote control and the router—which are both broader than and distinct from the speech recognition system itself.

The preferred embodiments all point in that same direction. Figure 3, for example, separates the "speech recognition processor system" from non-speech-recognition functionalities like internet access, telephone services, and video on demand, as well as physical architecture like the remote:




FIG. 3

Appx28 (annotations in Br. 26). As this figure makes clear, the "speech recognition system" is contained within the red portion, and not the blue or the green portion. Yet, under Promptu's definition, *the entire graphic*—red, blue, and green—describes and comprises a single "speech recognition system." That is obviously incorrect, as the district court recognized. The intrinsic evidence thus confirms that "speech recognition system" is "a system whose function is speech recognition."

### 3. Promptu's Contrary Arguments Lack Merit

Promptu offers three arguments in support of its broader view, but each relies upon a misreading of the patent and a fundamental misunderstanding of Comcast's contextual points.

*First*, Promptu alleges that the functions described in the claims do not provide an exhaustive account of the speech recognition system—because the claims use inclusive terms like "comprising," and because claim 53 recites "at least *part* of a speech recognition system," Appx89, 58:12-29, thus implying that there are "unclaimed" parts not described in the patent. Br. 51. But even when patents use "the open-ended term 'comprising,'" this Court has stressed that such language does not give "an unfettered license to interpret claims to embrace anything remotely related to the claimed invention." *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1260 (Fed. Cir. 2010). To the contrary, any interpretation of inclusive language must "be '*consistent with the specification,* . . . and that claim language should be read in light of the specification as it would be interpreted by one of ordinary skill in the art.'" *Id.* (emphasis in original, citation omitted). Here, the intrinsic evidence confirms that the "speech recognition system" is, in fact, directed to speech recognition, and Promptu identifies nothing in the patent to suggest that hypothetical "unclaimed" parts of the "speech recognition system" describe anything other than additional *speech recognition functions*. The possibility of "unclaimed" features is thus perfectly consistent

with Comcast's definition, and the intrinsic evidence overwhelmingly favors Comcast's view—because *every claimed function* relates directly to speech recognition.

*Second*, Promptu attempts to broaden the claim language through embodiments in the specification that supposedly permit the speech recognition system to "perform tasks unrelated to speech recognition processing." Br. 51-53 (citing Appx35, Fig. 10; Appx71, 22:8-15, 22:43-63; Appx75, 30:8-9, 30:30-31; Appx80, 39:56-61, 40:42-46). But none of these disclosures actually show what Promptu says: that the "speech recognition system" performs functions other than speech recognition functions. That is likely why Promptu never meaningfully describes these supposed non-speech-recognition functions.

*Third*, and finally, Promptu complains that the district court's construction "injects a subjective term of degree—'primarily'—into an otherwise clear claim." Br. 53. But that is not accurate. The court's construction does *not* include "primarily," and instead covers "a system *whose function* is speech recognition." Appx2 (emphasis added). As explained above, this Court's cases compel that construction and foreclose as "overly broad" Promptu's alternative view, *Acme Scale Co.*, 615 F. App'x at 679-80, because it "would sweep in larger systems that ancillarily perform speech recognition, while primarily performing other functions." Appx16; *see also Shire*, 787 F.3d at 1365-66.

### B. "Coupled to" Means "Connected in or Near"

The district court held that the speech recognition system described in the '196 patent is "*coupled to*" a wireline node when it is "*connected in or near*" the node. Appx2 (emphasis added). Promptu's contrary view—that "coupled to" means "in communication with"—misreads both the specification and this Court's prior decision. *Comcast*, 838 F. App'x at 553.

#### 1. The Intrinsic Evidence Confirms that the "Speech Recognition System" Must Be "Connected in or Near" a "Wireline Node"

The words "coupled to" mean "connected in or near" when used within the phrase "speech recognition system coupled to a wireline node." While the phrase "coupled to" could be read, in theory and isolation, to describe any conceivable connection between two things, the patent as a whole makes clear that the phrase has a narrower meaning. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 959 F.3d 1091, 1099 (Fed. Cir. 2020). This Court has explained repeatedly that "the claims 'must be read in view of the specification, of which they are a part.'" *Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*, 918 F.3d 928, 933 (Fed. Cir. 2019) (quoting *Phillips*, 415 F.3d at 1315). The context of the specification confirms that "coupled to" means "connected in or near" whenever it is used within the phrase "speech recognition system coupled to a wireline node."

For starters, the '196 patent is all about proximity. The patent is titled a "System and Method of Voice Recognition *Near* a Wireline Node . . . ," and the very first sentence of the background section explains that "[t]his invention relates to speech recognition performed *near* a wireline node." Appx23; Appx61, 1:26-28 (emphases added). In addition, the Abstract and claim 1 specifically describe a "speech processing system *at* a wireline node." Appx23 (Abstract); Appx85, 50:64-65 (emphasis added). And the specification discloses repeatedly "a speech recognition system that is centrally located *in or near* a wireline node." Appx63, 5:11-15; *see also* Appx69, 18:20-23 ("A Speech Packet Processor may be centrally located *in or near* a wireline node"); Appx69, 18:24-30 ("A speech processor system may be centrally located *in or near* a wireline node") (emphases added). That the patent "repeatedly and consistently characterizes" the speech recognition system as being located "in or near" the wireline node is powerful evidence that "coupled to" includes a proximity element. *Wisconsin Alumni Rsch. Found. v. Apple Inc.*, 905 F.3d 1341, 1351 (Fed. Cir. 2018) (internal citations omitted); *see also, e.g.*, *Forest Lab'ys, LLC*, 918 F.3d at 933 (adopting a narrowing construction based on the title, statements in the specification about what "[t]he invention relates to," and other disclosures in the specification).

That construction is also the only one consistent with the patent's stated purpose, which is improving "inefficient" upstream transmission protocols and reducing lag time for users. Appx62, 3:33-37; Appx63, 5:26-31; Appx63-64, 6:59-7:6. In light of that purpose, it would have made little sense for the inventor to place the speech recognition system far away from the system delivering video content to viewers (as Promptu's construction permits) as this would potentially reduce efficiency. Appx6496, ¶ 132.

"[T]he claim must be interpreted in light of the teachings of the written description and purpose of the invention described therein." *Apple Computer, Inc. v. Articulate Sys., Inc.,* 234 F.3d 14, 25 (Fed. Cir. 2000). Here, contextual evidence shows that the speech recognition system must be connected "in or near" the wireline node.

#### 2. Promptu's Overbroad Construction Flouts the Intrinsic Evidence

Promptu argues that "coupled to" means "in communication with." That construction dispenses with proximity altogether and would permit the "speech recognition system" and the "wireline node" to be on opposite sides of the planet, or even on different planets, so long as they can communicate. Appx6424; Appx8203. That literalist reading cannot square with the intrinsic evidence. For example, Promptu never explains the patent's title ("Voice Recognition *Near* a Wireline Node"), nor the patent's repeated description of the speech recognition system as "at," "in," or

"near" the wireline node. Appx23; *see, e.g.*, Appx23 (Abstract); Appx61, 1:26-28; Appx63, 5:11-15; Appx69, 18:20-26; Appx85, 50:64-65. And finally, Promptu makes no effort to square its construction with the patent's stated aim of reducing lag time. That is reason enough to affirm the district court.

Promptu instead offers two arguments to support its bid for reversal. Neither has merit.

*First*, Promptu notes that "[t]he patent discloses many types of couplings," including some that are "preceded with [the] modifier" "*communicatively coupled*." Br. 58 (emphasis added). But the various modifiers prove the opposite of Promptu's position. Every time the patent describes the *specific connection at issue*—between the speech recognition system and the wireline node—it either uses express language of proximity (*i.e.*, "at," "in," or "near"), or it uses the standalone phrase "coupled to" as a placeholder for those proximity terms. Appx23; Appx23 (Abstract); Appx61, 1:1-2, 1:26-28, 1:63-66; Appx63, 5:11-15; Appx64, 7:44-45; Appx69, 18:20-26; Appx71, 22:10, 22:13-14, 22:44-45; Appx85, 50:64-65; Appx86, 52:65-66; Appx88, 55:11-12; Appx89, 58:12-13. Moreover, when the patent describes a strictly "communicative" coupling, it does so explicitly—through the modifier "communicatively coupled." The phrase appears *four times* in the claims and *six times* in the specification. Appx65, 9:59-64; Appx79, 37:11-12, 37:58-60, 38:52-54;

Appx80, 40:38-41; Appx86-87, 52:65-53:21; Appx89, 57:57-64, 58:4-11. Yet, according to Promptu, it is entirely superfluous in all ten of those examples—because the term "coupling" by itself conveys a "communicative" relationship. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) (describing rule against superfluity). Unlike Promptu's construction, Comcast's position neatly explains the various ways in which the patent uses and modifies the word "coupled."

*Second*, Promptu suggests that this Court's prior decision in *Comcast v. Promptu*, 838 F. App'x 551 (Fed. Cir. 2021), rejected Comcast's view that "coupled to" means "connected in or near." Br. 58-59. That is not correct. This Court, in applying the "broadest reasonable interpretation" standard applicable to the IPR proceedings, affirmed the Board's determination that the "speech recognition system" and "wireline node" are "distinct elements," such that the speech recognition system can be "in" a wireline node *or* it can be "near" a wireline node. *Comcast,* 838 F. App'x at 553. Simply put, the "speech recognition system" is not the same thing as or coextensive with the "wireline node." The Court *never suggested* that "coupled to" means something broader than "in *or* near" vis-à-vis the "speech recognition system" and "wireline node." Promptu's suggestion that the district court somehow "flout[ed]" this Court's prior ruling is baseless. Br. 58-59.

## C. "Wireline Node" Must Be Construed Consistent with the Patent's Express Definition

The patent defines "centralized wireline node" as "a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node." Appx61, 1:66-2:2. The context makes clear that, after defining the term "centralized wireline node," the patent uses "wire-line node" (instead of the entire phrase "centralized wireline node") as a shorthand for that defined term throughout. The district court was thus correct to apply the express definition. Appx2.

### 1. The '196 Patent Expressly Defines "Centralized Wireline Node"

It is settled law that "the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs." *Phillips*, 415 F.3d at 1316. The drafters of the '196 patent chose to include an express definition of the phrase "centralized wireline node," and the district court was correct to conclude that the patent uses "wireline node" as a shorthand for that defined term. Appx16. Accordingly, the patent's unique definition controls.

On the first page of the specification, the patent explains that "the problems of speech recognition at *a centralized wireline node* in a network supporting video delivery or cable television delivery have not been addressed by such prior art."

Appx61, 1:63-66 (emphases added). And in the next sentence, the patent defines the key term: "For the purposes of the discussion herein, a centralized wireline node refers to a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node." Appx61, 1:66-2:2. The patent *never again* uses the full phrase—"centralized wireline node"—and instead uses the more abbreviated term "wireline node" throughout the patent. *See, e.g.*, Appx63, 5:11-15 ("The invention comprises a multi-user control system . . . that incorporates a speech recognition system that is centrally located in or near a wireline node, and which may include a Cable Television (CATV) Head-end."); Appx64, 7:42-47 ("FIG. 10 depicts . . . a method using a back channel from a multiplicity of user sites containing a multiplicity of identified speech channels presented to a speech processing system at a wireline node in a network supporting cable television delivery in accordance with the invention[.]"); Appx69, 18:20-23 ("A Speech Packet Processor may be centrally located in or near a wireline node specifically to capture and prepare the upstream speech packets that are to be fed to the Speech Recognition Engine.").

That context makes clear that "wireline node" operates as a shorthand for the defined term "centralized wireline node." It would make no sense for the patent drafters to define a term for "purposes of the discussion herein" in column 1 of the patent specification, and then never rely on that definition again at *any point* through

the next *59 columns of text*, including the claims. Appx61, 1:66-2:2. The phrase "wireline node" must operate as a shorthand for the defined term. In the district court's words, "[t]here is no other reason for the inclusion of a definition for a term ('centralized wireline node') never used in the patent." Appx16. Promptu cannot dispute that the patent provides an express definition meant to be used throughout the patent. Br. 61-63. But it does not even try to explain why the patent drafters would choose to define a single term at page one of the specification, yet never again use that term over the course of the next 59 columns spanning the entire specification (except preceding column 1) through the last claim of the patent. The only plausible explanation for inclusion of the definition is that the phrase "wireline node" operated as a shorthand for the defined term "centralized wireline node." This Court should reject Promptu's nonsensical and superfluous construction, and instead construe "wireline node" consistent with the express definition.

**2. Promptu's Arguments Fail**

Promptu makes two affirmative arguments, but neither is persuasive.

*First*, Promptu invokes the principle against superfluity to argue that the patent's shorthand use of "wireline node" renders the "centralized" modifier superfluous in the defined term. Br. 62. But any imprecision (or even superfluity) is attributable to the manner in which the patent is drafted. As the district court recognized, the patent defines the term "centralized wireline node" once and then deploys a

*space-saving* shorthand. Appx16. But according to Promptu, the patent devotes 23 words to defining a term that it never again uses. Occam's Razor teaches that the district court was correct, and Promptu is wrong.

*Second*, Promptu cites cases like *Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1369-70 (Fed. Cir. 2003), and *Mycogen Plant Sci. v. Monsanto Co.*, 243 F.3d 1316, 1328-29 (Fed. Cir. 2001), to suggest that this court will not generally construe a more abbreviated term as shorthand for an expressly defined phrase. Br. 62. But in those cases, the patent included intrinsic contextual evidence that the differing formulations meant different things, and that collapsing the two would have created inconsistencies within the patent. *Kumar*, 351 F.3d at 1369-70; *Mycogen*, 243 F.3d at 1328-29. In *Kumar*, for example, this Court declined to equate the terms "amorphous" and "completely amorphous" because "there [was] no indication . . . anywhere . . . in the specification that the term[s] . . . [were] used synonymously." *Id.* at 1369. In fact, "the specification distinguishe[d] between 'totally amorphous' material . . . and 'amorphous' material," and assigned distinct technical meanings to each one. *Id.* This case is precisely the opposite: Promptu cannot identify a single instance in which application of the express definition to any of the *27 uses* of "wireline node" in the patent would somehow thwart its meaning, intended application, or purpose. Indeed, all the relevant contextual cues indicate that "wireline node" is indeed a

shorthand for the defined term "centralized wireline node"—which otherwise is not used later throughout the rest of the patent.

## IV. The District Court Correctly Construed "Centralized Processing Station" in the '538 Patent

The district court construed "centralized processing station" to mean a "device at a cable-TV network head-end unit that receives and performs voice recognition on voice commands, and generates and returns instructions to set-top boxes to carry out the commands." Appx10. That construction tracks the claim language and specification. Promptu's contrary view—that a "centralized processing station" can be located *anywhere* and do virtually *nothing*—is nonsensical and inconsistent with the plain language. This Court should affirm.

### A. The "Centralized Processing Station" Is "Located at a Cable Television Head-End Unit"

#### 1. The Intrinsic Evidence Supports the Court's Construction

The claim term "centralized processing station" makes clear that the processing station is a *discrete physical thing* (a "station") that is *centrally located* ("centralized") vis-à-vis the "multitude of television set top boxes" from which it receives its signals. Appx104, 13:37-61. The specification, in turn, confirms that this discrete, centrally located "station" exists at the "head-end unit."

The patent uses the term "head-end" dozens of times to describe the central location at which voice commands are received and processed. *See, e.g.*, Appx98,

2:29-35; Appx99, 4:7-10, 4:17-23; Appx100, 5:12-21; Appx101, 7:31-33. The "central[ized] processing station," by contrast, appears just twice in the specification, and both times, it is expressly situated at the head-end unit. The "Summary of the Invention" describes the centralized processing station as being "located at a cable television headend unit." Appx98, 2:29-35. And, in the preferred embodiment, "head-end unit" and "centralized processing station" are housed in precisely the same place: block "160." Appx92, Fig. 1. The patent describes the "head end unit *160*" and the "central processing station *160*," confirming that they are identically situated. Appx99, 4:7-10, 4:17-23.

These are the only two references to the "centralized processing station" in the specification, and both situate the centralized processing station at the head-end. The head-end unit is a core feature of the patent (it appears *39 times* in the patent), and the patent does not contemplate or describe even a single scenario in which the "centralized processing station" exists anywhere but the head-end unit. *See, e.g.*, Appx91, Abstract; Appx98, 2:59-61, 65-67; Appx99, 4:7-10, 4:17-23; Appx102,

9:20-60; Appx103, 11:56-12:13. That is powerful contextual evidence that the centralized processing station exists at the head-end. *E.g.*, *Wisconsin Alumni Rsch. Found.*, 905 F.3d at 1351-52.[9]

### 2. Promptu's Contrary Arguments Lack Merit

Promptu cannot identify any plausible *alternative location* for the "centralized processing station." So, instead, it rewrites the term to defy locational positioning altogether. According to Promptu, a "centralized processing station" is a " portion of a cable television system at which voice commands are received and command functions are transmitted" (Br. 70)—a definition so broad that even a *de-centralized* collection of disbursed elements could constitute a "centralized processing station" so long as each participates in "receiving" and "transmitting" voice commands in some way. That is neither "centralized" nor a "station," and the district court was correct to reject so clear a deviation from the plain language.

Promptu offers two flawed arguments in support of its preferred construction. *First*, Promptu appeals to the presumption of "claim differentiation" to argue that the "centralized processing station" need not lie at the "head-end unit." Br. 65-68.

---

[9] Promptu argues in its brief that "[s]ome embodiments are claimed by reference to a specific location (head-end unit), whereas others are location-agnostic (centralized processing station)." Br. at 64. Promptu does not offer a direct citation to the patent—presumably because *both* embodiments that include a "central processing station" house that component within the head-end. Appx98, 2:29-33; Appx99, 4:7-10, 4:17-23.

But that presumption must yield to "the scope of the specification and intrinsic evidence." Appx11; *see also Seachange Int'l*, 413 F.3d at 1369 (Fed. Cir. 2005). The "claim differentiation" presumption is especially weak in this case because, as the district court explained, the patent repeatedly deploys dissimilar terms in interchangeable ways. Appx11; Appx11 n.9. Promptu ignores these fatal points, but cannot surmount them by omission.

*Second*, Promptu points to the "exemplary" language in one of the two embodiments—that voice commands may be "transmitted, *for example*, to a central processing station located at a cable television head-end unit." Appx98, 2:29-35 (emphasis added). According to Promptu, this exemplary language shows that the centralized processing station need not be located at the head-end. Br. 67-68 (quoting Appx98, 2:29-35).

But Promptu misconstrues both the relevant language and Comcast's broader argument. As the district court explained, "[b]ased on *the structure of the sentence*, the phrase 'for example' applies not to the location of the centralized processing station, (as Promptu argues) but to the 'transmission' of the voice command." Appx10-11 (emphasis added). Promptu resists this rule of grammar by inventing a conceptual argument: that "transmission of voice commands to a remote location is not optional" and therefore cannot be modified by "exemplary" language. Br. 68. But that is a non-sequitur—sometimes, *an example* is *the only example.* Like the

district court, this Court should follow the plain text rather than accept Promptu's invitation to rewrite it.

In any event, Comcast is not relying exclusively on a single exemplary embodiment. Rather, it is the patent *as a whole* that uses "head-end" as its default description, and then equates "centralized processing station" with the head-end each time that term appears. *Phillips*, 415 F.3d at 1323-24. Whether or not the specific language is exemplary, all of the contextual cues confirm that "centralized processing station" mirrors the default "head-end" formulation and was not inserted to dramatically expand the patent's scope.

### B. The Centralized Processing Station "Performs" Voice Recognition

The district court also correctly concluded that the centralized processing station "performs voice recognition." Appx3. That construction follows directly from the plain language of claims 34 and 40, which explain the centralized processing station is "configured to *receive and process*" voice commands "*by applying voice recognition to the second output to identify user-intended voice commands*, [and] to derive set-top-box-compatible instructions to carry out the identified voice commands." Appx104, 13:37-61, 14:37-64 (emphasis added). As a matter of plain text, this claim language—*i.e.,* the "processing" of voice commands through the "appl[ication]" of "voice recognition"—clearly describes the *performance* of voice recognition at the "centralized processing station."

Promptu resists this obvious point, insisting instead that because the patent uses the word "applying" rather than "performing," it must be the case that the "centralized processing station [can] send[] voice commands elsewhere to be interpreted." Br. 70. But Promptu does not even try to construe *the full clause*, which quite obviously describes the performance of voice recognition. Patents—like people—often express a single concept in multiple ways. Promptu's contrary view would read the key functional requirement out of the centralized processing station and render meaningless the entire phrase "applying voice recognition to the second output to identify user-intended voice commands." Appx104, 13:53-54, 14:54-56. This Court should affirm.

## V. This Court Should Affirm the Judgment of Noninfringement

Promptu stipulated that, under the district court's claim constructions, it cannot prove infringement. Appx9530. Because those constructions are correct, the district court was likewise correct to enter judgment of noninfringement. This Court should affirm that judgment. *See Starhome*, 743 F.3d at 854, 858-59.

## CONCLUSION

The judgment of the district court should be affirmed.

Dated: December 21, 2022

Respectfully submitted,

*/s/ Mark A. Perry*

Ian Moore
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue, Suite 3301
New York, New York 10153
(212) 310-8000

Mark A. Perry
*Principal Attorney*
Joshua Halpern
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, D.C. 20036
(202) 682-7000
Mark.Perry@weil.com

*Counsel for Appellees Comcast Corporation and Comcast Cable Communications, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2022, I served a copy of the foregoing DEFENDANTS-APPELLEES' RESPONSE BRIEF upon counsel of record, by electronic means via the Court's CM/ECF system.

Dated: December 21, 2022

*/s/ Mark A. Perry*
Mark A. Perry

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Circuit Rule 32(b)(3) and the Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that the foregoing brief complies with the type-volume limitations in Federal Circuit Rule 32(b)(1), because it contains 13,970 words, excluding the exempted parts under Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because the brief was prepared using Microsoft Word in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: December 21, 2022

*<u>/s/ Mark A. Perry</u>*

Mark A. Perry
WEIL, GOTSHAL & MANGES LLP
2001 M Street, N.W., Suite 600
Washington, D.C. 20036
(202) 682-7511