**22-1939**

IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

PROMPTU SYSTEMS CORPORATION,

*Plaintiff-Appellant*,

v.

COMCAST CORPORATION, COMCAST CABLE COMMUNICATIONS, LLC,

*Defendants-Appellees*.

**Appeal from the United States District Court for the Eastern District of Pennsylvania in Case No. 2:16-cv-06516-JS, Chief Judge Juan R. Sánchez**

## REPLY BRIEF FOR APPELLANT PROMPTU SYSTEMS CORPORATION

J. Michael Jakes
Christopher T. Blackford
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000

Jacob A. Schroeder
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
(650) 849-6600

Benjamin R. Schlesinger
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
271 17th Street, NW, Suite 1400
Atlanta, GA 30363
(404) 653-6400

*Counsel for Appellant Promptu Systems Corporation*

February 10, 2023

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

# CERTIFICATE OF INTEREST

**Case Number** 22-1939

**Short Case Caption** Promptu Systems Corporation v. Comcast Corporation

**Filing Party/Entity** Promptu Systems Corporation

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: February 10, 2023 Signature: /s/ *Jacob Schroeder*

Name: Jacob Schroeder

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ☐ None/Not Applicable | ☒ None/Not Applicable | ☒ None/Not Applicable |
| Promptu Systems Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Gerald F. Ivey<br>Stephen Kabakoff<br>Sydney R. Kestle<br>Jinwoo Kim<br>Daniel F. Klodowski<br>Cara E. Regan<br>Jeffrey C. Totten<br>John Williamson<br><br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | David H. Marion<br>Natalize Molz<br><br>White & Williams LLP | Scott Richard Mosko<br>Stacey M. Tam<br>Wade C. Yamazaki<br>Robert J. Yorio<br><br>Carr & Ferrell, LLP |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| *Promptu Sys. Corp. v. Comcast Cable Commc'ns*, No. 20-1253 (Fed. Cir.) | *Promptu Sys. Corp. v. Comcast Cable Commc'ns*, Nos. 19-2368, 19-2369 (Fed. Cir.) | *Promptu Sys. Corp. v. Comcast Cable Commc'ns*, No. 22-1093 (Fed. Cir.) |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................i

PRELIMINARY STATEMENT........................................................................1

ARGUMENT.................................................................................................4

I. The '196 patent uses "back channel" and "speech channels" to refer to streams of communications regardless of the specific physical transport protocol used for those communications. .......................................4

A. The district court's constructions of "back channel" and "speech channels" elevate dictionary definitions of "channel," contrary to *Phillips*.............................................................................................4

B. The '196 patent uses "back channel" to refer to a stream of communications and does not require "fixed" frequencies or time slots..................................................................................................8

C. Promptu is not challenging the district court's construction of "received back channel."......................................................................9

D. The '196 patent uses "speech channels" to refer to multiple streams of communications and does not require a "single" frequency band or time slot. ............................................................10

E. Comcast's remaining arguments are misdirections..............................12

1. Promptu did not present any argument on appeal that it did not present to the district court..................................................12

2. Although Comcast's definition of "channel" may find support in the *extrinsic* evidence, it is inconsistent with how a skilled artisan would understand "back channel" or "speech channels" in view of the *intrinsic* evidence.......................13

3. The claims of the '196 patent are not limited to cable network architectures..............................................................16

4. The fundamental dispute concerns whether the "back channel" requires fixed frequencies or time slots along the entire path.......... 18

II. The '196 patent neither precludes a "speech recognition system" from performing other functions nor imposes a requirement that it be located "near" a "centralized wireline node.".......... 19

A. A "speech recognition system" is "a system that performs speech recognition" even if it also performs other functions.......... 20

B. The '196 patent uses the term "coupled to" in the normal sense, to include two computer components that can communicate with one another.......... 23

1. The claim language does not impose a proximity relationship between the "speech recognition system" and the "wireline node.".......... 23

2. An unmodified claim term should not be construed to be narrower than the modified versions of that term used to describe embodiments throughout the specification.......... 24

3. Claims are not construed by limiting claim language based on a perceived purpose of the invention.......... 25

C. The '196 patent does not use "wireline node" as shorthand for "centralized wireline node.".......... 26

III. The '538 patent uses the term "centralized processing station" to refer to a station that is centralized with respect to a number of users and need only apply speech recognition.......... 27

A. The '538 patent defines "centralized processing station," the element that processes voice commands, without reference to its location.......... 28

B. The claim language indicates that the "centralized processing station" may, or may not, perform speech recognition.......... 29

IV. Comcast does not dispute that a remand is warranted if this Court changes any of the district court's constructions....................................30

CONCLUSION....................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acme Scale Co., Inc. v. LTS Scale Co.*,
615 F. App'x 673 (Fed. Cir. 2015)....22

*Bradford Co. v. Conteyor N. Am.*,
603 F.3d 1262 (Fed. Cir. 2010)....23

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
358 F.3d 1371 (Fed. Cir. 2004)....30

*Comcast Cable Commc'ns v. Promptu Sys.*,
838 F. App'x 551 (Fed. Cir. 2021)....9

*Eidos Display, LLC v. AU Optronics Corp.*,
779 F.3d 1360 (Fed. Cir. 2015)....14

*Ford Motor Co. v. United States*,
926 F.3d 741 (Fed. Cir. 2019)....10

*Grace Instrument Indus. v. Chandler Instruments Co.*,
57 F.4th 1001 (Fed. Cir. 2023)....6

*In re Suitco Surface, Inc.*,
603 F.3d 1255 (Fed. Cir. 2010)....22

*In re Walter*,
698 F. App'x 1022 (Fed. Cir. 2017)....7

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 784 (Fed. Cir. 2021)....5

*Intel Corp. v. Qualcomm Inc.*,
21 F.4th 801 (Fed. Cir. 2021)....25

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001)....13

*Johnson Worldwide Assocs. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999)....24

*Markman v. Westview Instruments, Inc.*,
517 U.S. 370 (1996) .....15

*Noah Sys. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012) .....12

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) .....6, 7, 17, 18

*Polara Eng'g v. Campbell Co.*,
894 F.3d 1339 (Fed. Cir. 2018) .....10

*Shire Dev., LLC v. Watson Pharms.*,
787 F.3d 1359 (Fed. Cir. 2015) .....22

*SRI Int'l v. Matsushita Elec. Corp.*,
775 F.2d 1107 (Fed. Cir. 1985) (en banc) .....23

*Texas Digital Sys. v. Telegenix, Inc.*,
308 F.3d 1193 (Fed. Cir. 2002) .....6

*Thorner v. Sony Comp. Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) ..... 11, 24, 28

**STATUTES**

35 U.S.C. § 112 .....27

## PRELIMINARY STATEMENT

Comcast's arguments supporting the district court's constructions run contrary to the intrinsic record and decades of claim construction precedent.

Comcast defends the district court's constructions of "back channel" and "speech channels"[1] by elevating dictionary definitions over the '196 patent's own disclosure. But this Court, in *Phillips*, clarified that dictionaries should never be given primacy over the intrinsic record. The '196 patent uses "back channel" to refer to a stream of communications transmitted from set-top boxes to a remote location, regardless of the physical protocol used to convey those communications. Similarly, the '196 patent uses "speech channels" to refer to streams of communications from specific user sites containing voice information, regardless of the physical protocol used to convey it. And while the specification does refer to frequencies in describing certain embodiments, the intrinsic record does not indicate that these embodiments are coextensive with the claims. Nothing in the intrinsic record restricts either term to protocols mandating the use of a fixed frequency or time slot.

---

[1] This brief uses "speech channels" to refer to the full term construed by the district court ("multiplicity of received identified speech channels" (Appx2)) both for brevity and because the parties' dispute centers on "speech channels."

Comcast's defense of the court's construction of "speech recognition system coupled to a wireline node" is similarly flawed for ignoring the intrinsic record. For "speech recognition system," Comcast's construction excludes systems that, though their function is speech recognition, also perform other tasks. The intrinsic record requires the opposite: the preambles use the transition word "comprising," and the specification describes the speech recognition system performing non-speech-recognition functions. For "coupled to," Comcast injects an amorphous "nearness" requirement and imports limiting modifiers from the specification when the claims recite none. And for "wireline node," Comcast contends, without any support in the record, that the specification uses it as "shorthand" for "centralized wireline node." But the patent expressly defined "centralized wireline node," not "wireline node," and the claims recite "wireline node," not "centralized wireline node."

Finally, for "centralized processing station" in the '538 patent, Comcast seeks to limit "centralized processing station" to its location in the embodiment described in the specification. But it is improper to limit the claims to embodiments described in the specification, even if only one embodiment is described. And when the claims sought to restrict the location of the "centralized processing station" to locations at the cable television head end, they did so by claiming it as a "head end unit."

Promptu respectfully requests this Court reverse the district court's constructions and adopt Promptu's constructions, which comport with the intrinsic record and this Court's claim construction precedent.

# ARGUMENT

## I. The ’196 patent uses “back channel” and “speech channels” to refer to streams of communications regardless of the specific physical transport protocol used for those communications.

Comcast defends the district court’s constructions by falling back on dictionary definitions of “channel.” *E.g.*, Red Br. 23. But “channel” is not a claim term in the ’196 patent. Appx85-90, 50:62-60:39. Instead, the invention of the ’196 patent is claimed using the terms “back channel” and “speech channels.” So while one definition of “channel” refers to a specific physical format for data transmission such as a fixed frequency band (e.g., “tune to channel 6”), the ’196 patent does not restrict the claimed “back channel” to communications sent using a specific physical format for data transmission. Similarly, nothing in the ’196 patent restricts “speech channels” to communications formatted as a *single* frequency or time slot. Rather, the ’196 patent used these terms at a higher level of technological abstraction than that of frequency bands or time slots.

### A. The district court’s constructions of “back channel” and “speech channels” elevate dictionary definitions of “channel,” contrary to *Phillips*.

The court’s claim constructions violated this Court’s mandate in *Phillips* to construe terms based on their use in the intrinsic record. Specifically, the court construed “back channel” by first accepting Comcast’s dictionary definitions of “channel” and then rejecting Promptu’s proposed construction because it “would

eliminate the meaning of the word channel," presumably as Comcast defined it. Appx18. Then, in a nonsense statement, the court found that the intrinsic record did not support rendering "channel" "utterly meaningless." Appx18. Comcast defends this methodology, which would require the specification to state all disagreements with all dictionary definitions of any word contained therein. Red Br. 23-32. This methodology is flawed for several reasons.

First, while the court and Comcast focused and relied on definitions of "channel," the word "channel" in isolation is not a claim term. Appx85-90, 50:62-60:39. The disputed terms were "back channel" and "speech channel." "[I]t is not always appropriate to break down a phrase and given it an interpretation that is merely the sum of its parts." *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 791-92 (Fed. Cir. 2021). Instead, a term should be construed only in a way that comports with the specification as a whole. *Id.* Comcast's brief did not address this authority, which was cited in Promptu's opening brief (Blue Br. 37). Here, the specification uses "back channel" and "speech channels" at a higher level of abstraction to refer to streams of communications—whether those communications are sent using fixed frequencies, dynamic frequencies, fixed time slots, dynamic time slots, or some other methodology. *E.g.,* Blue Br. 27-31, 43-44. A "back channel" refers to a stream of communications traveling upstream, and a "speech channel" refers to a stream of

communications containing speech data. Blue Br. 23. Nothing about these constructions makes "channel" "utterly meaningless." Appx18.

Second, and more fundamentally, the court's methodology conflicts with *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, this Court rejected elevating the role of dictionary definitions above a patent's own specification. *Id.* at 1319-24 (abrogating *Texas Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002)). Under the *Texas Digital* line of cases, claims were construed by adopting a chosen definition of the term unless the specification expressly redefined that term. *Phillips*, 415 F.3d at 1320. Elevating dictionaries "focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Id.* at 1321. To highlight the flaws with that approach, other definitions of "channel," and more specifically "back channel," support a broader interpretation. Blue Br. 33-34. But a "claim should not rise or fall based upon . . . the court's independent decision, uninformed by the specification, to rely on one dictionary rather than another." *Phillips*, 415 F.3d at 1322; *see also Grace Instrument Indus. v. Chandler Instruments Co.*, 57 F.4th 1001, 1010-12 (Fed. Cir. 2023) (reversing district court's interpretation for relying on dictionary definitions that contradicted the scope and meaning of a term that a skilled artisan would ascertain by reading the intrinsic record).

Here, the specification consistently uses "back channel" and "speech channels" to refer to streams of communications in a way that is agnostic to the specific physical protocol used to carry the information. Blue Br. 27-31, 43-44. For "back channel," this refers to the stream of communications sent upstream from the user's set-top boxes. Blue Br. 27-31. For "speech channels," this refers to the streams of communications received by the speech processing system or engine. Blue Br. 43-44. Flexibility on the implementation of these streams is embraced by the specification.

Third, the district court concluded that the specification did not express an intent to depart from Comcast's dictionary definition of "channel." Appx18. That logic is unsound because specifications and dictionaries serve different purposes. "[T]here may be a disconnect between the patentee's responsibility to describe and claim his invention, and the dictionary editors' objective of aggregating all possible definitions for particular words." *Phillips*, 415 F.3d at 1321. Thus, patents may use words in ways departing from dictionaries without expressly disavowing them. *Id.* at 1320-21. "If there is a conflict between the specification and a general purpose dictionary as to a claim's proper meaning, the specification controls." *In re Walter*, 698 F. App'x 1022, 1026 (Fed. Cir. 2017) (*citing Phillips*, 415 F.3d at 1318-24).

### B. The '196 patent uses "back channel" to refer to a stream of communications and does not require "fixed" frequencies or time slots.

The '196 patent uses "back channel" to refer to a stream of communications. Blue Br. 25-27. In the context of describing embodiments of the invention, the patent uses "back channel" in a general sense to refer to communications sent from a user to a speech recognition system over a network. Blue Br. 27-31. The patent nowhere requires that the "back channel" use "fixed" frequencies or time slots from end-to-end. *Id.*

Rather, the specification embraces flexibility in the physical format of the back channel, as it must traverse multiple different network types in multiple formats. Blue Br. 29-30. For example, the "back channel" may traverse multiple nodes within a network. *Id.*; *see also* Appx28, Fig. 3; Appx65, 9:48-10:13. The "back channel" may also traverse multiple types of networks, including a cable television network, a video delivery network (e.g., the Internet), or both. Blue Br. 25. And the "back channel" may also support whatever interfaces and protocols are required by those networks, such as "digital interfaces," "Ethernet protocols," "analog interfaces," or "wavelength division multiplexing." Blue Br. 28-30. These may be implemented without using fixed frequencies or time slots, as Comcast's expert acknowledged. Appx8214-8215. Notwithstanding changing formats and protocols potentially limitless times between a user and a speech recognition system, the patent refers to

this as the "back channel." Blue Br. 27-31. If there was some requirement that the frequencies and time slots must be "fixed" from end-to-end, one would expect to see that stated somewhere in the patent. It is not. *Id.*

### C. Promptu is not challenging the district court's construction of "received back channel."

Comcast devotes three pages of its brief to the district court's construction of "received back channel" (Red Br. 34-36) before asking this Court, in a footnote (Red Br. 36 n.5), to adopt a different construction of "received back channel" if the Court disagrees.

To be clear, Promptu is not seeking to disturb the district court's construction of "received back channel." Blue Br. 4; *see also* Blue Br. 40-41. This Court previously determined that "back channel" and "received back channel" refer to the same thing, just at different periods of time. *Comcast Cable Commc'ns v. Promptu Sys.*, 838 F. App'x 551, 554 (Fed. Cir. 2021) ("Although atypical and inartful, it is not unreasonable for the patentee to apply two different time frames to the same claim element, a 'back channel' before receipt and a 'received back channel' after receipt.").

The district court erred by giving "back channel" a construction (as fixed frequencies or time slots) different from the construction given to "received back channel" (as data). *See* Blue Br. 40-41.

Comcast, however, cannot challenge the district court's construction of "received back channel" (*see* Red Br. 36 n.5) when this is precisely the construction Comcast urged the court to adopt (Appx6386-6394). *See Polara Eng'g v. Campbell Co.*, 894 F.3d 1339, 1352 (Fed. Cir. 2018) ("[W]e look with extreme disfavor on [a party's] assertion that the district court erred by adopting a claim construction position it advocated at trial." (internal quotation omitted)). Nor can Comcast belatedly seek an alternative construction in a footnote. *E.g.*, *Ford Motor Co. v. United States*, 926 F.3d 741, 760 n.12 (Fed. Cir. 2019) ("Arguments raised only in footnotes . . . are waived." (internal quotation omitted)).

### D. The '196 patent uses "speech channels" to refer to multiple streams of communications and does not require a "single" frequency band or time slot.

The parties agreed that there must be some correlation between a "speech channel" and the user site. Appx7511; Appx6428-6429. The only issue on appeal is whether anything in the intrinsic record requires the one-to-one assignment of a "single band of frequencies or designated time slot" to each user site. Blue Br. 45-50. Such a requirement would mean that a given user could only send speech data to the speech processing system over that "single band" or "designated time slot." Nothing in the intrinsic record supports such a narrow construction of this term.

The patent embraces flexibility to accommodate multiple different networks or protocols. Indeed, the patent describes that a user's speech data may travel in the

form of a "stream" that may be "Ethernet compatible" or transmitted as "a series of packets," "digital speech packets," "digital speech signals," or any other protocol. Blue Br. 43-44. As just one example, an ethernet packet may traverse multiple networks from end to end and may be carried by differing frequency bands or time slots along that route. *Id.*; *see also* Blue Br. 27-31 (regarding the "back channel"). None of these embodiments restrict speech transmissions from a user to a speech recognition system to those that use only a "single" frequency band or time slot.

Comcast's primary argument relies on a disclosure of a *different* invention described in the '874 application. Red Br. 37-39. But Comcast does not address any of the authority cited in Promptu's opening brief explaining why this argument is flawed. Blue Br. 46-48 (collecting cases). At bottom, the '196 patent describes embodiments that may—not must—use the invention described in the '874 application. *Id.* And even if the '874 application were the only "type of partitioning" described in the '196 patent, as Comcast contends, that alone does not warrant limiting claim scope. *Thorner v. Sony Comp. Entm't Am. LLC*, 669 F.3d 1362, 1366-67 (Fed. Cir. 2012) ("It is likewise not enough that the only embodiments, or all of the embodiments, contain a particular limitation."). Nor is Comcast correct—the patent describes several other ways to partition the back channel, such as appending a "digital address" to the "digital speech packets" so that the system knows where the speech packets originated. *See, e.g.*, Appx63, 5:45-58. Partitioning by way of a

digital address enables efficient processing of the speech data, improves routing, reduces latency, and results in lower upstream data rate. *See id.*; Appx69, 18:34-37.

### E. Comcast's remaining arguments are misdirections.

Comcast raises several other arguments in defense of the district court's constructions. None warrant an affirmance.

#### 1. Promptu did not present any argument on appeal that it did not present to the district court.

Comcast contends that Promptu "forfeited" any argument about judicial estoppel concerning "back channel" and "speech channels" "by failing to present them" to the district court. Red Br. 41. Comcast is wrong. Promptu presented its judicial estoppel argument concerning "back channel" in its brief (Appx7975-7977) responding to Comcast's opening claim construction brief (Appx6426-6428). And Promptu presented its judicial estoppel argument concerning both terms during the two-day claim construction hearing on these terms. *See, e.g.*, Appx8659; Appx8680-8684; Appx8692-8697; Appx9174-9176. Arguments made in briefs and *Markman* hearings are not forfeited. *E.g.*, *Noah Sys. v. Intuit Inc.*, 675 F.3d 1302, 1310-11 (Fed. Cir. 2012).

Similarly, Comcast criticizes Promptu's reliance on Figures 24 and 29, stating "neither of which were discussed in its briefing below." Red Br. 28. But Promptu discussed these figures at length during the two-day claim construction hearing. *See, e.g.*, Appx8630-8631; Appx8665-8666; Appx9070-9075; Appx9091-9092. For

context, while the district court imposed a 15-page limit on supplemental briefs (for eight claim terms), the court set aside three full days for argument at the hearing. *See, e.g.*, Appx7499; Appx6321.

Finally, Comcast lodges the same criticisms towards Promptu's explanation that "the back channel may traverse multiple networks in myriad formats or protocols along its path." Red Br. 40 n.6. But Promptu presented this to the district court in briefing. Appx7508-7509; Appx7975-7976; Appx7892-7895. Promptu also presented this argument during the hearing when discussing Figures 24 and 29, as noted in the prior paragraph (*see supra*).

In each instance, Promptu presented these arguments to the district court. There has been no forfeiture. And if there was any doubt whether these arguments were squarely presented to the district court, a party is not precluded on appeal "from supporting its existing claim construction position with new citations to the specification." *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001). Promptu's construction has not changed.

#### 2. Although Comcast's definition of "channel" may find support in the *extrinsic* evidence, it is inconsistent with how a skilled artisan would understand "back channel" or "speech channels" in view of the *intrinsic* evidence.

Comcast repeatedly asserts that Promptu's expert, Dr. Shamos, "conceded" or "admitted" that Comcast's construction of "back channel" is correct. Red Br. 16, 26-28. As an initial matter, the Court need not consider extrinsic evidence at all

when the intrinsic evidence is clear. *Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360, 1365 (Fed. Cir. 2015). But Dr. Shamos made no such concession or admission. Yes, Dr. Shamos agreed that Comcast's definition of "channel" is a definition of channel. But he disagreed that it had any bearing on how a skilled artisan would understand "back channel" or "speech channel" in view of the specification. In each instance cited by Comcast, Dr. Shamos explained how the intrinsic record does not support Comcast's construction, and he never conceded the correctness of Comcast's constructions for "back channel" or "speech channels."

According to Comcast, Dr. Shamos "concedes" Comcast's technical dictionary provides a standard meaning of "channel," whereas Promptu's construction is different. Red Br. 16 (citing Appx2863 ¶ 51; Appx3630-3631, 208:17-209:1; Appx3618, 158:14-25); Red Br. 26 (similar). But Dr. Shamos made clear that "channel" "does not always have [the standard] meaning, and it is not used that way in the '196 Patent." Appx2863 ¶ 51. Dr. Shamos opined that while Comcast's dictionary provides a definition of "channel," "[t]hat doesn't mean that's what it means in the specification" and "[t]hat doesn't mean that's what a speech channel is." Appx3630-3631, 208:17-209:1; Appx3618, 158:14-25 ("The term 'back channel' clearly refers to the data itself. . . . that's the way it's used in the patent."). This is proper *Phillips* analysis. *See* Section I.A, *supra*.

According to Comcast, Dr. Shamos also "admitted" "back channel" is different from the way one ordinarily might understand the word channel. Red Br. 27 (citing Appx3616, 156:10-22). But after acknowledging Comcast's definition of channel, Dr. Shamos then opined "that's not the way that it's used in this patent. And you can easily tell that from the claim language itself. It makes no sense to use Comcast's construction and plug it into the claim language. It results in nonsense." Appx3616-3617, 156:23-157:2.

According to Comcast, Dr. Shamos further admitted that a skilled artisan, reading one paragraph of the intrinsic record, would agree with Comcast's construction. Red Br. 28 (citing Appx3625-3626, 184:10-185:16). But the correct claim construction inquiry analyzes the specification as a whole. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389 (1996) ("[A claim] term can be defined only in a way that comports with the instrument as a whole."). Dr. Shamos was simply answering the question asked of him and made clear he would have a different answer in view of the entire specification:

> Dr. Shamos: If all you had were this paragraph and you didn't have the rest of the patent, then you couldn't tell. But we have the rest of the patent and we have to interpret the claim term in light of the rest of the patent.
>
> Q: In this paragraph at least, is it -- is it -- and if you didn't have the rest of the patent, would you have any leaning one way or another whether "back channel," in the context of the paragraph I just was reading from -- whether it refers to the contents themselves as opposed to the mode of transporting the contents?

> Dr. Shamos: Ah. So the way I'll answer the question is, if I took that -- if I cut that paragraph out of the patent and I threw it in front of a person of ordinary skill in the art and I said, what does "back channel" mean to you in this paragraph, then I think most people would probably say, oh, the back channel is the transport mechanism, not the content. But we don't get to go through that exercise because we have the whole specification.

Appx3625-3626, 184:21-185:16.[2]

### 3. The claims of the '196 patent are not limited to cable network architectures.

Comcast contends that the specification "repeatedly makes clear that, as part of the architecture of a cable system, upstream communications are transmitted over a fixed or reserved frequency band." Red Br. 33. None of these examples supports Comcast's narrow construction for several reasons.

As an initial matter, none of the excerpts relied on by Comcast uses the claim term "back channel." Appx61, 2:44-46; Appx62, 3:4-5, 21-23, 42-43; Appx63, 5:22-26; Appx66, 11:15-18, 12:21-24.

Second, the excerpts from columns two and three of the patent describe the prior art under a subheading titled "Background Art." These excerpts describe how "the most popular digital set-top boxes" in "most cable systems" "typically" or "often"

---

[2] Comcast is also wrong when it says Promptu "relies almost entirely on" this "single paragraph." Red Br. 28 (citing Appx75, 30:4-9). Promptu also relied on at least Appx23, Abstract; Appx28, Fig. 3; Appx66, 12:45-56; Appx76, 32:1-3; Appx76, 32:25-34; Appx79, 37:55-57. Blue Br. 25-29. Promptu further relied on Figures 24 and 29, as Comcast later acknowledges and faults Promptu for relying on them. Red Br. 28-29.

operate. Appx61, 2:44-46; Appx62, 3:4-5, 21-23, 42-43. This does not limit the claimed invention.

The remaining excerpts cited by Comcast simply describe an embodiment operating within that existing cable network. Appx63, 5:22-26; Appx66, 11:15-18, 12:21-24. But even that description uses words of inclusion by indicating the return path in a cable network is "often" five to 40 MHz. Appx63, 5:22-26. "Often" does not mean "always." And the patent's reference to this often used frequency band describes an implementation using "one of the most popular digital set-top boxes" referenced earlier. *Compare id.* with Appx62, 3:4-5. This embodiment does not limit the claims to using a fixed frequency band any more than it limits the claims to using that specific set-top box. *Phillips*, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.").

Finally, and more fundamentally, the claimed invention is not limited to cable networks and should not be constrained by an embodiment describing an implementation in a particular cable network. For example, claim 14, 27, and 53 cover embodiments that receive a back channel in a "video delivery" network that is not a "cable television delivery" network. Moreover, claims 40-43 recite embodiments where some of the users are on a "fiber-to-the home" network as opposed to a traditional cable network.

Words of inclusion describing the prior art and a particular implementation of one embodiment of the invention should not be imported into the claims as a limitation absent a clear manifestation of that intent. *Phillips*, 415 F.3d at 1323. The excerpts cited by Comcast manifest no such intent.

**4. The fundamental dispute concerns whether the "back channel" requires fixed frequencies or time slots along the entire path.**

The parties agree the "back channel" flows upstream. Appx18, n.13. The parties only dispute whether that stream requires fixed frequencies or time slots. While Comcast's opposition mischaracterizes the dispute as whether the back channel is either data (on the one hand) or a path (on the other) (Red Br. 28), that dispute is orthogonal to the issue presented to the district court.

Promptu's construction of "back channel" as a stream conveys both concepts. A communication stream does not exist without data flowing through it (Appx3616-3618, 156:1-158:13), and that data necessarily follows a path from a source to a destination. There is no inconsistency in saying the speech recognition system receives that stream, then takes the data and partitions it into speech information from specific users. Promptu's construction, consistent with the intrinsic evidence, does not restrict the physical format of that stream to those that only use "fixed" frequency bands or time slots from source to destination, as Comcast's construction requires. *See, e.g.*, Appx8205-8207; Blue Br. 42-50.

And if the dispute were truly about whether "channel" refers to data or a path, Comcast fails to explain how a path (i.e., Comcast's construction of "back channel") is turned into data (i.e., Comcast's construction of "received back channel") and then turned back into a path (i.e., Comcast's construction of "speech channels") as required, for example, by claims 1 or 27. This inconsistency demonstrates the flaws with Comcast's construction of "back channel" and "speech channels" as frequencies or time slots.

## II. The '196 patent neither precludes a "speech recognition system" from performing other functions nor imposes a requirement that it be located "near" a "centralized wireline node."

Comcast defends the district court's construction of "speech recognition system coupled to a wireline node" without regard to the teachings of the '196 patent or the language used to recite the claimed invention. For "speech recognition system," Comcast ignores that the claims use the transition word "comprising" when it contends that a "speech recognition system" ceases to be one if, despite meeting all elements of the claims, it performs enough additional (and unclaimed) functions. For "coupled to," Comcast ignores that the specification describes many types of couplings when it contends that the claimed "coupled to," unmodified by any adverb, is narrower than those examples. Finally, Comcast argues that "wireline node" is a shorthand for a different term that was expressly defined in the specification, even though that different term was not used in the claims.

### A. A "speech recognition system" is "a system that performs speech recognition" even if it also performs other functions.

The parties dispute whether a speech recognition system ceases to be the claimed "speech recognition system" if, in addition to performing speech recognition, it also performs other functions. The intrinsic record resolves this dispute.

Figure 10 of the patent depicts operations performed by the speech recognition system. Appx35, Fig. 10; Appx71, 22:8-15. These steps roughly correspond, for example, to the steps recited in claim 1 of the '196 patent. The specification states, however, that the speech recognition system performs "at least" these operations because it describes other operations, too. Appx75, 30:8-9, 30-31; *see also* Appx85, 50:38-41. As just a few examples, the speech recognition system may perform functions relating to communicating over the network (Appx75, 30:10-14), such as for management and billing functionality (Appx75, 30:15-52). The latter involves, for example, functionality concerning user account information, credit information, credit limits, parental safeguards, passwords, and confirmation of commitments. Appx75, 30:15-52. These are ancillary to speech recognition. The speech recognition system may also perform functions relating to content management, such as managing a list of services available within the network, guide listings, video on demand services, and pay-per-view services. Appx75-76, 30:61-31:6. The specification nowhere indicates that a speech recognition system ceases to be one if,

by some undescribed metric, it spends more time or resources performing these ancillary functions than those related to recognizing speech. A phone does not cease being a phone simply because it can also play music, play videos, or send emails, just as a speech recognition system does not cease being one simply because it can perform additional functions.

Promptu raised this in its opening brief (Blue Br. 51-53) and Comcast does not meaningfully address it (Red Br. 51). Instead, Comcast responds stating: "none of these disclosures actually show what Promptu says: that the 'speech recognition system' performs functions other than speech recognition functions." Red Br. 51. Comcast's conclusory statement is puzzling. To the extent Comcast now argues that "speech engine 1330" (discussed in those examples) is not the claimed "speech recognition system," Comcast previously agreed that the "speech engine" is an embodiment of the speech recognition system. Appx6425 ("Figure 23 depicts the 'speech engine' (object 1330), which is the 'speech recognition system.'"). Regardless, these passages describe the operations of speech engine 1330 (Appx75-76, 30:10-31:6), a component within the claimed "speech recognition system."

Nor does Comcast distinguish the authority cited in Promptu's opening brief (Blue Br. 53-55). Instead, Comcast relies on three cases easily distinguished on their facts (Red Br. 46-47, 50). In *Shire*, this Court rejected a construction of "lipophilic matrix" that included matrix structures where only one component of the structure

was lipophilic because the intrinsic evidence expressly required the "main component of the matrix structure" to be lipophilic and that the matrix, itself, exhibit lipophilic characteristics. *Shire Dev., LLC v. Watson Pharms.*, 787 F.3d 1359, 1365-66 (Fed. Cir. 2015). In *Acme*, this Court rejected a construction of a "material handling vehicle" that would include a table equipped with rollers because "it stretches the bounds of any reasonable interpretation" to say a table with rollers is a "vehicle." *Acme Scale Co., Inc. v. LTS Scale Co.*, 615 F. App'x 673, 679-80 (Fed. Cir. 2015). Similarly, in *Suitco*, this Court rejected a construction of "material for finishing the top surface of the floor" that did not require the material to actually "finish" (i.e., be the final treatment or coating of) the surface. *In re Suitco Surface, Inc.*, 603 F.3d 1255, 1260-61 (Fed. Cir. 2010).

In each case, this Court excluded structures from the construction that did not actually meet the claimed structure based on express statements in the specification. *Shire*, 787 F.3d 1365-66 (holding a "lipophilic matrix" must be lipophilic); *Acme*, 615 F. App'x 679-80 (holding a "material handling vehicle" must be capable of moving and function to transport material); *Suitco*, 603 F.3d at 1260-61 (holding a "material for finishing the top surface" must be the final treatment or coating). This case presents the opposite question: whether the Court should adopt a construction excluding a structure that, despite meeting the claim element, also meets additional, unclaimed elements. Nothing in Comcast's cases warrants such an approach.

### B. The ’196 patent uses the term “coupled to” in the normal sense, to include two computer components that can communicate with one another.

The typical dispute over the claim term “coupled to” concerns whether it permits indirect coupling between two elements. *See, e.g.*, *Bradford Co. v. Conteyor N. Am.*, 603 F.3d 1262, 1270 (Fed. Cir. 2010). Here, however, the district court adopted a construction of “coupled to” limited by how “near” the two elements must be to one another. Comcast’s defense of the district court’s construction further underscores the flaws with it.

#### 1. The claim language does not impose a proximity relationship between the “speech recognition system” and the “wireline node.”

“Specifications teach. Claims claim.” *SRI Int’l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 n.14 (Fed. Cir. 1985) (en banc). Comcast is correct that the specification of the ’196 patent teaches embodiments where the speech recognition system may be placed in or near any number of components typically found in a network such as a wireline node, a server farm, a web-site hosting facility, or a network gateway. *See, e.g.*, Appx63, 5:11-17. But had Promptu sought to limit its claimed invention to those speech recognition systems located “in or near” a certain network component (such as a wireline node), it would have said so in the claim. Promptu did that in claims 44, 45, and 46. There, for example, Promptu expressly

stated that the "wireline node" is "located proximate" to another structure. Appx89, claims 44-46.

But the claims at issue here do not place a similar restriction on the location of the "wireline node" vis-à-vis the "speech recognition system." Instead, Promptu's claims recite a speech recognition system "coupled to" a wireline node. The term "coupled to" is well-understood to be a "broad and general" term. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 992 (Fed. Cir. 1999). A patentee "is free to choose a broad term and expect to obtain the full scope" of its meaning. *Thorner*, 669 F.3d at 1367.

**2. An unmodified claim term should not be construed to be narrower than the modified versions of that term used to describe embodiments throughout the specification.**

Comcast contends the various modifiers used in the specification to describe specific couplings prove that "coupled to," without a modifier, is narrower than the modified instances of "coupled to" described in the specification. Red Br. 55-56. But "[g]eneral descriptive terms will ordinarily be given their full meaning; modifiers will not be added to broad terms standing alone." *Johnson*, 175 F.3d at 989 (collecting cases). Promptu cited this authority in its opening brief (Blue Br. 58) and Comcast does not address it (Red Br. 55-56). And the one case Comcast cites supports an even broader construction of "coupled to" that would include connections that do not permit communication. *Intel Corp. v. Qualcomm Inc.*, 21

F.4th 801, 810 (Fed. Cir. 2021) (describing rule against superfluity). By contrast, nothing justifies the district court's narrow construction of this term.

### 3. Claims are not construed by limiting claim language based on a perceived purpose of the invention.

Finally, Comcast justifies its construction as being "the only one consistent with the patent's stated purpose" of addressing "upstream transmission protocols" to reduce latency for users. Red Br. 54. This proves too much. That same argument would suggest locating the speech recognition system within the user's set-top box to eliminate the need for an upstream transmission protocol, and its inherent latency, altogether. But that is the exact opposite of what the patent teaches. *See, e.g.*, Appx61, 1:30-40 (speech processing at a user's premises is quite limited); Appx63, 5:3-10 (describing the invention as providing speech recognition services to multiple users). And as for latency, the patent describes methods designed to address those concerns. *See, e.g.*, Appx63, 5:45-58 (addressing upstream latency by utilizing a push-to-talk button; digital addressing; and screens, icons, or overlays on the user interface). Nothing describes addressing upstream transmission latency by placing the "speech recognition system" and the "wireline node" physically "near" one another. Hence, this Court has repeatedly held it is impermissible to limit claim scope based on a perceived purpose of the invention rather than the words of the claim. Blue Br. 69 (collecting cases).

### C. The '196 patent does not use "wireline node" as shorthand for "centralized wireline node."

The entirety of Comcast's defense of the district court's construction of "wireline node" is premised on Comcast's argument that the '196 patent uses "wireline node" as a shorthand for "centralized" wireline node. Red Br. 57-61. This argument finds no support in the intrinsic record.

First, if Promptu sought to define "wireline node" as "a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node," it could have done so. Instead, it assigned that definition to a different term, "centralized wireline node." Appx61, 1:63-2:2.

Second, nothing in the intrinsic record supports Comcast's contention that "centralized wireline node" was defined then later referred to as "wireline node." If Comcast were correct, then one would expect the first instance of either term to be "centralized wireline node." It is not. The title of the patent uses the term "wireline node," not "centralized wireline node." Appx23. The Abstract uses the term "wireline node," not "centralized wireline node." Appx23. And the "Technical Field" of the invention uses the term "wireline node," not "centralized wireline node." Appx61, 1:25-28. Each uses the unmodified term "wireline node" before a specific type of wireline node (a "centralized" wireline node) is defined. This clue from the intrinsic record establishes that "centralized wireline node" means something different than "wireline node." *See* Blue Br. 61-63.

Finally, Comcast contends it would "make no sense" for the patent to define a term in the specification that it never used again. Red Br. 58. But there is nothing nonsensical about describing a problem in a particular context and providing a solution that applies in a broader context. The prior art failed to address "problems of speech recognition at a centralized wireline node" (Appx61, 1:63-66), and Promptu's solution provides speech recognition at *any* wireline node, "centralized" or not. Indeed, when Promptu drafted its claims to "particularly point[] out and distinctly claim[] the subject matter" regarded as the invention (35 U.S.C. § 112), Promptu used the term "wireline node," not "centralized wireline node." The plain language of Promptu's claims should govern.

## III. The '538 patent uses the term "centralized processing station" to refer to a station that is centralized with respect to a number of users and need only apply speech recognition.

Comcast argues that Promptu's construction of "centralized processing station" would locate it anywhere and have it do virtually nothing. Red Br. 61. Comcast's hyperbole is unwarranted.

The '538 patent describes a method and apparatus for "remotely processing voice commands." Appx91, Abstract. The prior art had located the speech processing functionality on the user's set-top box and Promptu sought to improve upon that by locating it remote from the user. Appx98, 1:59-63. The patent describes an embodiment where a "centralized processing station" may be located

at a cable television head end. Appx98, 2:29-32. The claims can be divided into two buckets: those reciting a "head end unit" (Appx102-103, claims 2, 19) and those reciting a "centralized processing station" (Appx104, claims 34, 40). Use of different terminology implies different scope. Blue Br. 65-70.

### A. The '538 patent defines "centralized processing station," the element that processes voice commands, without reference to its location.

The primary dispute is not whether the "centralized processing station" may be located anywhere, but instead whether it must be located a cable television "head end." Comcast's sole argument is that because the only example of a centralized processing station describes it as located at a cable television head end, the "centralized processing station" must be located there. Red Br. 62-65. But it is improper to limit the claims to the embodiments described in the specification, even if all the embodiments contain a particular limitation. *Thorner*, 669 F.3d at 1366 (it is "not enough that the only embodiments, or all of the embodiments, contain a particular limitation"). Comcast does not address this authority.

The claim language also supports Promptu. The claims use two different terms to recite the element that receives voice commands– one that defines the element by specifying its location (i.e., the "head end unit") and one that does not ("centralized processing station"). The district court construed "head end unit" by requiring it to be located at a cable television head end. Appx1; Appx8-10. Promptu did not

challenge this construction. Unlike that term, which expressly referenced the location "head end," there is no basis to limit the location of "centralized processing station" to a cable television head end. Blue Br. 65-70.

### B. The claim language indicates that the "centralized processing station" may, or may not, perform speech recognition.

The secondary dispute is not whether the "centralized processing station" can do "virtually nothing" or not. Rather, this dispute concerns whether it must "perform" voice recognition. The functions of the claimed "centralized processing station" depend on the specific claim-at-issue.

Claims 1 and 2 are instructive. Those recite a structure located at a cable television head end, i.e., a "head-end unit." Appx102. Claim 1 requires processing the voice command "at" the head-end unit. Claim 2, does not. Claim 2 merely requires the head end unit to "deriv[e]" a "command function" corresponding to the voice command. Appx102, 9:34, 56-57. When the claims sought to specify where speech processing was performed, they said so.

The claims reciting a centralized processing station, such as claims 34 and 40, use different language to delineate the functions performed by the claimed "centralized processing station." Appx104. Those claims recite that a "centralized processing station" "appl[ies]" speech recognition to identify the user-intended command. Appx104, 13:51-58, 14:52-60. While the centralized processing station may perform speech recognition itself to satisfy the limitation, nothing in the

language of the claim prohibits the centralized processing station from applying speech recognition by sending voice commands to a different component to perform speech recognition processing and return the result. According to claims 34 and 40, the claimed "centralized processing station" must (a) receive voice commands, (b) process those commands by applying speech recognition, (c) derive instructions based on the understood voice commands, and (d) return those instructions. Appx104. These claims are agnostic as to where speech recognition is performed, so long as the centralized processing station applies it. The Court should reject the district court's rewrite of the claims to recite "performs" when they instead recite "applies." *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004).

**IV. Comcast does not dispute that a remand is warranted if this Court changes any of the district court's constructions.**

Promptu's opening brief states that, if this Court revises any of the district court's constructions, the Court should vacate the district court's judgment and remand for further proceedings. *See, e.g.*, Blue Br. 71. Comcast nowhere disputes this relief in its response brief.

## CONCLUSION

For the foregoing reasons, the district court's constructions of "back channel," "speech channels," "speech recognition system coupled to a wireline node," and "centralized processing station" are erroneous. None of the justifications offered by

Comcast in defense of the court's narrow constructions are grounded in the intrinsic record or this Court's claim construction precedent. Promptu respectfully requests this Court adopt Promptu's proposed constructions of these terms, vacate the district court's entry of final judgment, and remand for further proceedings so that Promptu may receive its day in court before the jury in this case Promptu filed in 2016.

Date: February 10, 2023

Respectfully submitted,

/s/ *Jacob Schroeder*

Jacob Schroeder
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
3300 Hillview Avenue
Palo Alto, CA 94304
(650) 849-6600

J. Michael Jakes
Christopher T. Blackford
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Benjamin R. Schlesinger
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
271 17th Street, NW, Suite 1400
Atlanta, GA 30363
(404) 653-6400

*Counsel for Appellant*
*Promptu Systems Corporation*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. Cir. R. 32:

This brief contains 6,887 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6):

This brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman.

| Jacob Schroeder | /s/ *Jacob Schroeder* |
|---|---|
| Name of Counsel | Signature of Counsel |


| | |
|---|---|
| Law Firm | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP |
| Address | 3300 Hillview Avenue |
| City, State, ZIP | Palo Alto, CA 94304 |
| Telephone | (650) 849-6600 |
| Fax | (202) 408-4400 |
| E-mail Address | jacob.schroeder@finnegan.com |